## COMMONWEALTH vs. CRAIG NEUMYER.

No. 98-P-537.

Essex. February 10, 1999. - October 28, 1999.

Present: WARNER, C.J., SMITH, & BROWN, JJ.

Further appellate review granted, 430 Mass. 1112 (2000).

*Due Process of Law,* Access to evidence. *Rape. Privileged Communication. Evidence,* Privileged communication. *Practice, Criminal,* In camera inspection. *Words,* "Confidential communication."

In a rape case, there was no violation of a rape crisis center's due process rights, where the judge's findings were sufficient to support his order for production of certain rape crisis center telephone logs, and where the rape crisis center was afforded notice of what records were sought, as well as the opportunity to be heard in opposition. [159-160]

Information in telephone logs maintained by a rape crisis center that recorded the date and time of contact was not "information transmitted" to or "information received by" a sexual assault counselor within the scope of the privilege set forth in G. L. c. 233, § 20J, and was properly subject, where relevant, to an order to produce in a rape prosecution. [160]

In a rape case, the defendant's proffer in support of his motion under Mass.R. Crim.P. 17, seeking production of records maintained by a rape crisis center and privileged under G. L. c. 233, § 20J, was sufficient to support the judge's order to produce the records for an in camera review. [160-162]

INDICTMENTS found and returned in the Superior Court Department on November 6, 1996.

A motion to review certain counseling records was heard by *Howard J. Whitehead,* J., and an order to produce records and adjudication of contempt were entered by him on November 21, 1997, and November 24, 1997, respectively.

*Elizabeth M. Clague & Wendy J. Murphy* for Boston Area Rape Crisis Center.

*William J. Leahy,* Committee for Public Counsel Services *(Jill Sellers Gately,* Committee for Public Counsel Services, with him) for the defendant.

SMITH, J. On November 24, 1997, a Superior Court judge

ruled the Boston Area Rape Crisis Center (BARCC) to be in contempt as a result of its refusal to comply with an order to provide the defendant, Craig Neumyer, with a sanitized copy of its hotline log indicating the date and time of a telephone conversation that the eighteen year old complainant in the case had with a BARCC counselor and to provide the court with copies of the unsanitized hotline log for an in camera inspection.[1] The defendant, who was charged in two indictments with rape (G. L. c. 265, § 22) and in a third indictment with indecent assault and battery upon a person over the age of fourteen years (G. L. c. 265, § 13H), sought the records in preparation of his defense. We summarize the facts leading up to the adjudication of contempt, including the complainant's testimony given at the defendant's probable cause hearing in the District Court.

During the first day of the probable cause hearing (which lasted five days), the complainant testified that the defendant orally and vaginally raped her and indecently assaulted and battered her during the early morning hours of June 25, 1996, while she and the defendant were in the back seat of her automobile. The defendant was the boyfriend of one of the complainant's friends, Jacqueline. The incident occurred after the complainant, the defendant, another of the complainant's friends (Megan), and three other individuals spent the latter part of the afternoon and evening consuming alcohol and smoking marijuana. The complainant testified that she was intoxicated at the time of the incident and that she only remembered bits and pieces of the events that occurred that evening.

The complainant testified that on the day after the incident she asked Megan how she would define rape. Megan replied, "if a person tries anything sexually with me after I say no." The complainant then testified, without objection or a claim of privilege, that later that day she called BARCC and told the counselor that she "thought [she] had been raped" but she "didn't know what rape was."[2] Megan was present during the complainant's telephone conversation with the counselor.

---

[1] The judge ordered BARCC to pay a fine of one hundred dollars per day commencing November 24, 1997, until such time as BARCC complied with the order to produce the records, but stayed the actual payment of the amount owed pending BARCC's appeal from the adjudication of contempt. On January 20, 1998, a single justice of this court stayed the accrual of the daily fine during the pendency of the appeal.

[2] BARCC urges this court to order all trial judges to notify all complainants in sexual assault cases that their communications with sexual assault

On the second day of the hearing, the Commonwealth objected to defense counsel's questioning the complainant regarding her telephone conversation with the counselor on the ground that the communication was privileged. The District Court judge ruled that Megan's presence during the complainant's telephone conversation waived any privilege.

The complainant then testified that she told the counselor that she was not sure if she had been raped. The counselor responded that the complainant had indeed been raped and that she should go to a hospital and be examined. Two days later, the complainant went to a hospital with Megan. While she was at the hospital, the complainant telephoned the police to report the incident.

The complainant did not tell Jacqueline about the incident because she did not want to lose her friendship. The complainant continued to socialize with the defendant after she reported the alleged rapes to the police, and on July 3, 1996, she spent the night in the defendant's bedroom with the defendant, Megan, and Jacqueline.

A police officer also testified at the hearing that the defendant admitted that he had sexual contact with the complainant in her automobile on June 25, 1996. The defendant, however, claimed the incident was consensual.

On April 30, 1997, the defendant filed a motion and affidavit in the Superior Court, asking the court to review certain records from BARCC concerning counseling received by the complainant in regard to the alleged rape. On June 13, 1997, a Superior Court judge[3] ordered BARCC to produce the records unless it claimed a privilege and, if it claimed a privilege, to state in writing the nature of that privilege. In a letter dated July 2, 1997, BARCC responded to the order, stating that all BARCC counselors are certified rape crisis counselors and that the records were absolutely privileged under G. L. c. 233, § 20J, the statute protecting from disclosure the records of a victim's counseling sessions with a sexual assault counselor.

---

counselors are confidential and cannot be revealed without the complainant's written consent.

We think the better way to handle the matter is for the various District Attorneys to see that their prosecutors and victim-witness advocates are aware of G. L. c. 233, § 20J, and its provisions.

[3]The same Superior Court judge presided over all of the subsequent proceedings regarding the defendant's motion seeking the court's review of the complainant's rape counseling records.

BARCC was not notified of the subsequent hearing that took place in the Superior Court on August 15, 1997, during which the judge heard arguments from the defendant and the Commonwealth regarding the defendant's motion. In a subsequent written memorandum and order, the judge concluded that the records were indeed privileged, but he nevertheless ordered their production for in camera review.[4]

On November 3, 1997, defense counsel informed the court that, although BARCC had claimed that the records were privileged, it now claimed that no such records existed. As a result, the judge summoned BARCC's keeper of the records to appear on November 17, 1997, for the purpose of giving testimony regarding BARCC's responses to the June 13, 1997, and August 15, 1997, orders.

On November 17, 1997, BARCC's executive director appeared with counsel and informed the judge that there were no treatment records pertaining to the complainant.[5] However, upon further questioning, it became apparent that BARCC did possess log entries documenting the complainant's calls to its counselors. BARCC maintained that the logs were "merely for statistical and funding purposes" and did not record the substance of the calls. Defense counsel then requested production of the logs. BARCC thereupon informed the court that, although the logs did not contain substantive communications, they might contain information about possible referrals that may have been made and, in any event, BARCC believed that any record of a communication, including a log entry indicating only the date and time of the call, was privileged. The judge continued the case to November 21, 1997, and instructed BARCC to review the log entries to determine whether they

---

[4]The judge specifically found that the complainant's conversation with a BARCC counselor was "the 'turning point' in the case" because "[the complainant] had experienced uncertainty as to whether or not she had been raped until the conversation occurred. Based upon the conversation which took place, she ultimately concluded that she had been raped, and criminal proceedings ensued." The judge concluded that the records were "relevant and material to the defense of the case and that the information contained in the records [could not] accurately be obtained from another source" because the complainant demonstrated difficulty remembering important events occurring around the time of the alleged rape. Since only the counselor and the complainant knew what advice the counselor had given her, the counselor's record would "seem to be the most reliable account of [those] conversations."

[5]BARCC's executive director is also its keeper of the records.

contained any information other than the date and time of the communication.

On November 21, 1997, BARCC reported that it had a single log entry documenting the complainant's call to BARCC, which contained information regarding the substance of that conversation. The judge ruled that the fact of the communication, i.e., the date and time of the call, was not privileged under G. L. c. 233, § 20J, and ordered BARCC to provide the defendant with copies of the sanitized log entry indicating only the date and time of the complainant's communication with BARCC. The judge then ruled that for the reasons stated in his order of August 15, 1997, the defendant's proffer satisfied the requirements of *Commonwealth* v. *Fuller*, 423 Mass. 216 (1996),[6] and ordered BARCC to produce the unsanitized log entry for an in camera review.[7] BARCC refused to produce either set of documents. On November 24, 1997, in a written memorandum and order, the judge memorialized his findings and orders made at the November 21, 1997, hearing and ruled BARCC to be in contempt.

On appeal, BARCC claims that the judge erred in ordering it to provide the defendant with the sanitized hotline log and in ordering production of the unsanitized hotline log for in camera review by the judge for the following reasons: (1) the complainant's and BARCC's due process rights were violated; (2) the order violated G. L. c. 233, § 20J, as interpreted by *Fuller*; and (3) even if the sanitized hotline log is not privileged, the judge erred in ordering BARCC to provide the defendant with the information because Mass.R.Crim.P. 14(a), 378 Mass. 874 (1979), does not permit the production of evidence from private third parties.

---

[6]In *Fuller*, the court ruled that where records that are privileged under G. L. c. 233, § 20J, are at issue, a judge should undertake an in camera review of the materials only "when a defendant's motion for production of the records has demonstrated a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt." 423 Mass. at 226.

[7]Although BARCC's brief implies that they were ordered to produce more than one log entry, the judge's order states that BARCC found only one log entry pertaining to the complainant, and we note that the judge carefully tailored his order to reflect that fact. We also note that, because the judge's order was limited to the one call, and the complainant chose to reveal her identity to BARCC, we need not address BARCC's arguments concerning its need to protect hotline callers' anonymity.

1. *The due process claims.* BARCC claims that the complainant's due process rights were violated because the judge's order was based upon information obtained as a result of an erroneous evidentiary ruling at the probable cause hearing in the District Court.

BARCC, however, fails to acknowledge that the complainant's initial testimony at the hearing about her conversation with BARCC counselors was given without any objection or claim of privilege having been made. This testimony was sufficient to support the judge's finding that the complainant was unsure about whether she had been raped until after the telephone call. Thus, we conclude that BARCC's claim must fail.[8]

BARCC also claims that its own due process rights were violated by (1) the judge's August 15, 1997, order requiring it to produce records for in camera review when it was not present or even notified of the hearing, and (2) the judge's refusal to require that the defendant make the required showing pursuant to *Commonwealth* v. *Fuller*, 423 Mass. at 226.

As a threshold matter, we note that the adjudication of contempt did not arise from BARCC's failure to produce records in response to the order arising from the hearing on August 15, 1997; rather, it arose from BARCC's refusal to produce the hotline logs requested by the court at the hearing on November 21, 1997. Any error caused by the failure to notify BARCC of the August 15, 1997, hearing was rectified by BARCC's subsequent notice of the hearings on November 17, 1997, and November 21, 1997, and its opportunity to be heard on both dates.

BARCC's additional claim is that it was denied due process

---

[8]We note that, even if the order was based upon evidence erroneously admitted at the probable cause hearing, BARCC fails to cite any authority showing that it has independent standing to challenge the order by claiming an alleged deprivation of the *complainant's* due process rights resulting from an evidentiary ruling concerning the *complainant's* testimony at a proceeding in which BARCC had no right to participate. While BARCC is "expected to assert its client's interest in the confidentiality of records in its possession," *Commonwealth* v. *Fuller*, 423 Mass. at 228, its standing to challenge the court's rulings regarding the disclosure of this information is limited. See *United States* v. *Lowe*, 948 F. Supp. 97, 101 (D. Mass. 1996) (rape counseling center has no independent standing to assert its client's privilege in the face of a waiver by its client). Further, BARCC does not appear to have independent standing to challenge the propriety of an evidentiary ruling regarding the complainant's testimony at the defendant's probable cause hearing.

because, although the defendant's motion sought treatment records, there was no proffer for the hotline logs. That claim is without merit. At the hearing on November 17, 1997, BARCC (1) was given the opportunity to review the defendant's proffer; (2) was aware of the judge's findings of August 15, 1997; (3) anticipated that the judge would use the proffer in regard to the hotline logs; (4) asked for a continuance to have an opportunity to be heard; (5) received a continuance; and (6) submitted multiple written memoranda in support of its claims.[9] Thus, we conclude that BARCC's due process rights were not violated by the November 24, 1997, order.

2. *Claimed violations of G. L. c. 233, § 20J, and the* Fuller *decision.* (a) *The order to provide the defendant with the sanitized hotline logs.* BARCC claims that G. L. c. 233, § 20J, prevents disclosure of the date and time of any contact between the complainant and BARCC counselors. The statute defines "confidential communication" as "information transmitted in confidence by and between a victim of sexual assault and a sexual assault counselor . . . includ[ing] all information received by the sexual assault counselor which arises out of and in the course of such counseling." G. L. c. 233, § 20J. Because the date and time of the communication is not "information transmitted" or "information received by" a counselor during the course of counseling, the judge did not err in finding that such information fell outside the scope of the privilege. See *Commonwealth* v. *Clancy*, 402 Mass. 664, 667 (1988) (patient-psychotherapist privilege does not protect existence of the fact of hospitalization, dates, or purpose of hospitalization); *United States* v. *Lowe*, 948 F. Supp. 97, 101 (D. Mass. 1996) ("[d]ates of contact, the length of contact, the nature of the contact [i.e., telephonic or face-to-face], and the name of the rape crisis counselor" were not privileged communications).

(b) *The order to produce the unsanitized hotline logs for in camera review.* Contrary to BARCC's contention, the mandates

---

[9]We note that BARCC has failed to show that its inability to review the probable cause testimony impaired its ability to defend the complainant's privilege. Although BARCC now takes issue with the judge's determination that the complainant had not decided that she had been raped until after she spoke with BARCC counselors, this is the same argument the prosecutor made at the hearing on August 15, 1997, which failed to persuade the judge. Moreover, we note that BARCC knew which portions of that testimony served as the basis of the defendant's request, and it discussed the testimony with the prosecutor prior to the hearing on November 21, 1997.

of *Commonwealth* v. *Fuller*, 423 Mass. at 426, were not violated by the court's failure to provide BARCC with an opportunity to be heard prior to its June 13, 1997, and August 15, 1997,[10] orders. Those orders did not serve as the basis for the adjudication of contempt and BARCC was given an opportunity to be heard and to defend its client's privilege at both the November 17, 1997, and November 21, 1997, hearings. See *Commonwealth* v. *Fuller*, 423 Mass. at 220 n.3.

BARCC also claims that the defendant's proffer was inadequate because (1) it fails to indicate what evidence the defendant is seeking; (2) it fails to identify the records it seeks to have the court review; and (3) it fails to make a "good faith" showing that the records may contain exculpatory evidence not available from another source. BARCC further argues that the resulting order to produce the records for in camera review violates the prohibition on "fishing expeditions" for unspecified material.

Contrary to BARCC's contentions, the defendant's proffer indicates that it seeks (1) the court's review of records pertaining to the complainant's conversations with counselors arising from the alleged incident in question; (2) evidence confirming his theory that the complainant had a motive to fabricate the allegations; and (3) evidence of bias and prejudice. In addition, unlike the defendant in *Fuller*, *supra* at 227-228, the defendant here made a showing that the records may contain exculpatory evidence not available elsewhere. The complainant's testimony at the probable cause hearing showed that she had difficulty accurately recalling the events which occurred around the time of the alleged incident. Her testimony also indicated that she had not made the determination that she had been raped until after she spoke with BARCC counselors and that she did not tell her best friend Jacqueline about the incident because she was afraid that she would lose her friendship. As the judge noted, in the circumstances, it is likely that the complainant may have expressed some ambivalence to BARCC counselors, and, therefore, her questions to the counselors and their responses (which apparently dissipated that ambivalence) may only be ac-

---

[10]BARCC's brief refers to an order on "April 15, 1997." However, the docket does not reflect any order issued on that date; consequently, we assume that BARCC is referring to the order of August 15, 1997.

curately obtained from reference to the hotline log.[11] We conclude that the judge did not err in determining that an in camera review of the hotline log is proper in this case.

3. *Authority to order production of the hotline logs.* Finally, BARCC argues that the judge had no authority to order the production of the logs because Mass.R.Crim.P. 14(a) does not allow the defendant to obtain the production of evidence from private third parties. However, in *Commonwealth* v. *Wanis*, 426 Mass. 639, 644 (1998), a decision announced after the judge's ruling in this case, the court held, among other things, that a motion pursuant to Mass.R.Crim.P. 17, 378 Mass. 885 (1979), would lie in certain circumstances to obtain the production of witnesses.

Because we have concluded that the judge did not err in finding that the sanitized hotline log was not privileged and because the defendant's proffer for the judge's review of the unsanitized log was sufficient under *Fuller*, we conclude that the judge may properly order BARCC to produce the records prior to trial through the use of a subpoena duces tecum. See Mass.R.Crim.P. 17(a)(2).

Therefore, the judgment is affirmed and the case is remanded for further proceedings in accordance with this opinion. The order staying the daily fine is vacated.

*So ordered.*

---

[11]Megan testified that although she was present during the complainant's telephone conversations with BARCC counselors, she did not hear what was being discussed.