## COMMONWEALTH *vs.* CRAIG NEUMYER.

Essex. March 6, 2000. - June 30, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, & COWIN, JJ.

*Rape. Evidence,* Privileged communication. *Practice, Criminal,* In camera inspection. *Privileged Communication. Due Process of Law,* Access to evidence.

The date, time, and fact of a "hotline" communication between a victim of sexual assault and a rape counsellor were not "information transmitted" or "information received by" a counsellor within the meaning of the provisions of G. L. c. 233, § 20J, and thus were not privileged. [29-30] ABRAMS, J., dissenting, with whom MARSHALL, C.J., joined.

A defendant charged with sex offenses properly made a proffer of relevancy of privileged rape counselling materials he sought to have the judge examine, and there was no merit to claims of the counselling agency that it was not afforded sufficient notice or opportunity to review the defendant's proffer. [30-31]

The relevancy proffer of a criminal defendant charged with sex crimes was sufficient to support the judge's determination that there was a good faith, specific, and reasonable basis to believe that certain rape counselling records would contain exculpatory evidence, relevant and material to the defense of the case, that could not be obtained from other sources, and to warrant the judge's in camera review of the materials; further, the judge properly applied the standard set forth in *Commonwealth* v. *Fuller,* 423 Mass. 216 (1996). [31-34] ABRAMS, J., dissenting, with whom MARSHALL, C.J., joined.

A rape counselling center did not demonstrate that a judge's order in a rape case under Mass. R. Crim. P. 17 (a) (2) to produce privileged records violated the purpose of Mass. R. Crim. P. 14. [34]

A rape counselling center's obligation to assert a privilege with respect to client records did not implicate any due process rights; moreover, the record of proceedings of a criminal defendant's request for an in camera inspection of those records showed that the center was afforded notice and an opportunity to be heard on the issue. [34-35]

An agency that failed to comply with the order of a judge to produce records relating to counselling a rape victim was correctly held in contempt and monetary sanctions were appropriately assessed. [36] ABRAMS, J., dissenting, with whom MARSHALL, C.J., joined.

INDICTMENTS found and returned in the Superior Court Department on November 6, 1996.

A motion to review certain counselling records was heard by *Howard J. Whitehead*, J., and an order to produce records and an adjudication of contempt were entered by him on November 21, 1997, and November 24, 1997, respectively.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Wendy J. Murphy* (*Elizabeth M. Clague* with her) for Boston Area Rape Crisis Center.

*William J. Leahy*, Committee for Public Counsel Services (*Jill Sellers Gately*, Committee for Public Counsel Services, with him) for the defendant.

The following submitted briefs for amici curiae:

*Michael J. Sullivan*, District Attorney, & *Robert C. Thompson*, Assistant District Attorney, for District Attorney for the Plymouth District.

*Ralph C. Martin, II*, District Attorney, & *John P. Zanini* & *Amanda Lovell*, Assistant District Attorneys, for District Attorney for the Suffolk District.

*Kevin M. Burke*, District Attorney, & *Gregory I. Massing* & *Christina E. Miller*, Assistant District Attorneys, for District Attorney for the Eastern District & others.

*Ellen M. Bublick*, of Arizona, & *Alexandra Miller*, of Illinois, for National Coalition Against Sexual Assault & others.

COWIN, J. The defendant was charged in two indictments with rape and in a third indictment with indecent assault and battery on a person over the age of fourteen years.[1] In preparing his defense, he sought certain records of the Boston Area Rape Crisis Center (BARCC). A Superior Court judge ordered BARCC to produce for the defendant a sanitized copy of its "hotline" records stating the time, date, and fact of a telephone communication between the victim and a rape counsellor. The judge concluded that these records were not privileged, but relevant, and thus discoverable pursuant to general discovery principles. The judge also ordered BARCC to produce, for in camera inspection, records of the substance of communications between the victim and the rape counsellor, after determining that these records were privileged, but relevant "pursuant to the principles of" *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993),

---

[1] On December 29, 1999, the defendant pleaded guilty to three charges of assault and battery thereby disposing of all charges. The Commonwealth had nol prossed so much of the indictments as alleged the more serious offenses. We conclude nevertheless that the appeal is not moot. See note 9, *infra*.

and *Commonwealth* v. *Fuller*, 423 Mass. 216 (1996).[2] BARCC refused to comply with these orders and the Superior Court judge ruled BARCC in contempt. BARCC appealed from the finding of contempt to the Appeals Court which affirmed the Superior Court judgment. *Commonwealth* v. *Neumyer*, 48 Mass. App. Ct. 154 (1999). We granted BARCC's application for further appellate review.[3]

Although this case arises in the context of a contempt proceeding, it involves essentially another application of the *Bishop-Fuller* procedure. The primary issues for resolution here are whether the time, date, and fact of a communication between the victim and the rape counsellor are privileged and whether the defendant's proffer in this case was sufficient under the standards of *Commonwealth* v. *Fuller, supra*, to trigger an in camera review of the rape counselling records.

We start by summarizing the events culminating in the contempt adjudication. At a District Court probable cause hearing, the victim testified to the following during her direct testimony and cross-examination. After she and her friend Megan had spent an afternoon and night drinking alcohol and smoking marijuana with the defendant and three other individuals, the defendant raped and indecently assaulted her in the back seat of her automobile in the early morning hours of June 25, 1996. The victim only remembered portions of this incident due to her intoxicated condition. Later that day the victim asked Megan how she would define rape. Megan replied, "Someone does to you what you don't want them to do." With Megan present, the victim called BARCC and told a counsellor that she "thought [she] had been raped," but "didn't know what rape

[2]*Commonwealth* v. *Fuller*, 423 Mass. 216 (1996), and *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), mandate a five-stage procedure for defendants seeking to obtain access to treatment records of victims in sexual assault cases. Stage One is a determination whether the records are privileged. If the records are privileged, in Stage Two the judge considers whether the defendant by motion "has demonstrated a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt," and whether the material is available elsewhere. *Commonwealth* v. *Fuller, supra* at 226.

[3]We acknowledge briefs filed by the district attorneys for the Eastern, Berkshire, Bristol, Cape and Islands, Norfolk, Northern, and Northwestern districts; the district attorney for the Plymouth district; the district attorney for the Suffolk district; and the National Coalition Against Sexual Assault and several others, as amici curiae.

was." The woman at BARCC told her to go to a hospital.[4] The next day the victim went with Megan to a hospital and, from there, telephoned the police and reported the incident. The victim continued to socialize with the defendant and spent the night of July 3, 1996, in the defendant's bedroom with him, Megan, and Jacqueline, who was both the defendant's girl friend and the victim's best friend. The victim never told Jacqueline about the incident because she feared losing her friendship. Later during cross-examination, defense counsel inquired regarding further details of the victim's conversations with the BARCC counsellor, and the victim responded that she and the counsellor discussed how to define rape.[5]

After a probable cause finding and the return of indictments in the Superior Court, the defendant filed a motion and affidavit requesting the court to determine whether the BARCC counselling records regarding this incident were privileged and, if so, to review them. On June 13, 1997, a Superior Court judge[6] ordered BARCC to produce the requested records unless it claimed a privilege, see note 2, *supra*.[7] In response to the order, BARCC asserted that, because all its counsellors are certified rape crisis counsellors, the records were absolutely privileged under G. L. c. 233, § 20J, the statute that protects from disclosure records of a victim's sessions with a sexual assault counsellor.

On August 15, 1997, the defendant and the Commonwealth argued the defendant's motion. BARCC was not notified of and did not participate in this hearing. After the hearing, the judge

---

[4]This part of the conversation with the counsellor was elicited on cross-examination without objection.

[5]The Commonwealth objected to this part of the conversation on the basis of a privileged communication, but the District Court judge, believing that Megan's presence eliminated any privilege, overruled the objection.

[6]All the Superior Court proceedings relevant to this appeal occurred before the same judge, who conducted thorough proceedings throughout.

[7]The *Fuller* case counsels that "[r]ape counselling records should not be summonsed to the court . . . until a defendant has filed a written motion seeking their production and explaining in detail his reasons for doing so, *and* a judge has ruled on the motion in the defendant's favor [i.e., made a ruling on the Stage Two relevancy issue]" (emphasis supplied). *Id.* It appears from the record that the judge here ordered the records produced initially because "no claim of privilege has been made by the complainant herself or by . . . the subject counselling facilities." (If no privilege is asserted, the *Bishop-Fuller* procedures of course are inapplicable.) The judge's order further permitted withholding of the records if a privilege were claimed.

issued a written memorandum and order in which he concluded that the records were privileged under G. L. c. 233, § 20J, because the records were generated as a result of communications between the victim and a certified sexual assault counsellor in a way that "did not disclose the information to a person other than a person present for the benefit of [the victim]." After determining that the records were privileged, the judge, "pursuant to Stage II of *Commonwealth* v. *Bishop*, 416 Mass. 169, 181 (1993), as modified by *Commonwealth* v. *Fuller*, 423 Mass. 216, 225-227 (1996)," reviewed the defendant's proffer, and concluded that the records "are relevant and material to the defense of the case and . . . the information . . . cannot accurately be obtained from another source." The judge's relevance determination was based on his decision that the conversations with the counsellor were the "turning point" in the case; that prior to that conversation, the victim was uncertain whether she had been raped; and that it was only after the conversation that she concluded that she had been raped and contacted the police. Thus, he issued an order to BARCC to produce the records for an in camera review pursuant to *Commonwealth* v. *Fuller, supra.*

On November 3, 1997, defense counsel informed the judge that, although BARCC had previously asserted that the records were privileged, it now claimed that no records existed. The judge ordered BARCC's keeper of records to testify regarding its failure to comply with his June 13 and August 15, 1997, orders to produce the records. At a hearing on November 17, 1997, BARCC's executive director (who is also the keeper of records) informed the judge that there were no treatment records regarding the victim, but that BARCC did possess log entries of the victim's call, which entries did not contain the substance of any conversation, but might contain information about referrals by the counsellor. In any event, BARCC pressed its claim that even a log entry (indicating the date and time of a call) was privileged.

The judge continued the case until November 21, 1997, and ordered BARCC to review its log entries to determine whether they included any information beyond the date and time of the victim's call. On November 21, 1997, BARCC informed the judge that it had identified a single log entry regarding the substance of the victim's conversation. The judge ruled that the date and time of the call were not privileged under G. L. c. 233,

§ 20J, and ordered BARCC to provide the defendant a redacted copy of the log showing only that information. As to the records that were privileged, the judge ruled that the defendant's proffer satisfied the requisites of *Commonwealth* v. *Fuller, supra,*[8] for the reasons stated in his August 15, 1997, order, and ordered that BARCC produce the complete log entry for an in camera review.

BARCC refused to comply with either of the judge's orders. On November 24, 1997, the judge issued a written memorandum and order recounting the findings and orders he had made at the November 21, 1997, hearing and ruling that BARCC was in contempt for not complying with the orders.[9]

The defendant pleaded guilty, see note 1, *supra,* after the decision of the Appeals Court, but before the case was entered in this court. The case is not moot, however, as the contempt order remains outstanding and, pursuant to it, money is owed. Cf. *Commonwealth* v. *Rape Crisis Servs. of Greater Lowell, Inc.,* 416 Mass. 190, 192-192 (1993) (appeal from order holding operator of treatment center in civil contempt for refusal to produce rape victim's treatment records for in camera inspection moot, where accused rapist's guilty plea ended his need for access to the records and judge had vacated contempt order).

BARCC contends on appeal that the judge's November 24, 1997, order (1) violates the provisions of G. L. c. 233, § 20J, and the mandates of *Commonwealth* v. *Fuller, supra,* for a variety of reasons; (2) is erroneous because Mass. R. Crim. P. 14 (a) (1) (C), 378 Mass. 874 (1979), limits pretrial discovery to material in the possession, custody, or control of the prosecutor; and (3) violates the due process rights of BARCC and of the victim under the Fourteenth Amendment to the United States

---

[8]See note 2, *supra.*

[9]The judge also ordered BARCC to pay a fine of $100 per day commencing November 24, 1997, until such time as BARCC complied with his order to produce the records. The judge stayed payment of the amount owed, pending BARCC's appeal from the contempt adjudication. On January 20, 1998, a single justice of the Appeals Court stayed the accrual of the fine during the pendency of the appeal. See *Commonwealth* v. *Neumyer,* 48 Mass. App. Ct. 154, 155 n.1 (1999). Although the Appeals Court ordered the stay vacated, *id.* at 162, that never occurred. A petition for rehearing to the Appeals Court and the allowance of an application for further appellate review by this court prevented the Appeals Court rescript from issuing; thus the stay was never actually vacated. See Mass. R. A. P. 23, as appearing in 367 Mass. 921 (1975).

Constitution and art. 12 of the Massachusetts Declaration of Rights.

1. *Time, date, and fact of communication.* BARCC contends that the judge's order that it produce the "hotline" information violates G. L. c. 233, § 20J (sexual assault counsellor privilege), and the requirements of *Commonwealth* v. *Fuller, supra.* The judge concluded correctly that the portion of the records that sets forth the time, date, and fact of a communication between the complainant and the rape counsellor on the "hotline" is not protected by the sexual assault counsellor privilege. General Laws c. 233, § 20J, provides that a "[c]onfidential communication" is "information transmitted in confidence by and between a victim of sexual assault and a sexual assault counsellor . . . includ[ing] all information received by the sexual assault counsellor which arises out of and in the course of such counselling." As the Appeals Court noted, the date and time of the communication is not "information transmitted" or "information received by" a counsellor during the course of counselling. *Commonwealth* v. *Neumyer*, 48 Mass. App. Ct. 154, 160 (1999). Thus, the judge did not err in concluding that such information was not within the scope of that privilege. Although the dissent maintains otherwise, this has been the traditional interpretation accorded all privileges, including that in § 20J. See *Commonwealth* v. *Clancy*, 402 Mass. 664, 667 (1988) (patient-psychotherapist privilege does not protect existence of fact of hospitalization, dates, or purpose of hospitalization); *United States* v. *Lowe*, 948 F. Supp. 97, 101 (D. Mass. 1996) (rape counselling records with dates of contact, length of contact, nature of contact [i.e., telephonic or in person], and name of rape crisis counsellor not privileged communication). See also *In re Subpoena Served Upon Zuniga*, 714 F.2d 632, 640 (6th Cir.), cert. denied, 464 U.S. 983 (1983) ("as a general rule, the identity of a patient or the fact and time of his treatment does not fall within the scope of the psychotherapist-patient privilege"); *Santelli* v. *Electro-Motive*, 188 F.R.D. 306, 310 (N.D. Ill. 1999) (psychotherapist privilege does not prevent disclosure of date of treatment or identity of psychotherapists); *Vanderbilt* v. *Chilmark*, 174 F.R.D. 225, 230 (D. Mass. 1997) ("Facts regarding the very occurrence of psychotherapy, such as the dates of treatment, are not privileged"); *In re Grand Jury Subpoena (Zerendow)*, 925 F. Supp. 849, 855 (D. Mass. 1995) (holding that identity of attorney's client and course of payment

for legal fees not normally protected by attorney-client privilege); *In re Grand Jury Subpoenas Duces Tecum*, 638 F. Supp. 794, 799 (D. Me. 1986), quoting *In re Subpoena Served Upon Zuniga, supra* at 639 ("no privilege precludes disclosure of the 'identity of a [non-Medicare or non-Medicaid] patient or the fact and time of his treatment' "). Once the determination is made that the records are not privileged, the *Bishop-Fuller* procedure is no longer applicable. Thus, there was no error in the judge's order that BARCC produce the "hotline" log containing the time, date, and fact of this call only.

2. *Stage Two* — Fuller *relevancy determination*. BARCC maintains that the judge violated the provisions of *Commonwealth* v. *Fuller, supra*, by failing to require the defendant to submit the proffer required for a Stage Two relevancy determination. (See note 2, *supra*). BARCC's assertion is incorrect. The defendant submitted the required proffer on April 30, 1997, in his motion for review of certain records. Although this motion appears to have been filed in connection with a "Stage One" privilege determination, see *Commonwealth* v. *Bishop, supra* at 181, the motion and in particular its accompanying detailed affidavit suffice as a basis for a Stage Two relevancy determination, and the judge clearly considered it as such.[10]

BARCC further complains that it had no opportunity to review the proffer until the middle of the "final *Bishop* hearing" and that it did not have an opportunity to review the transcripts of the prior proceedings in the case. The transcript of the November 17 hearing makes it clear that BARCC was given an opportunity by the judge on that day (which was before the "final *Bishop* hearing" of November 21) to review the defendant's proffer, was aware of the judge's prior finding of August 15, asked for and received a continuance, and submitted written memoranda arguing its position. Further, all these items were matters of record, and copies of court documents and transcripts could have been obtained. (BARCC was aware of the pendency of these proceedings at least since June 13, 1997, the date of the original order that the records be produced.)

---

[10]We observe that the motion itself states: "The factual grounds and theories of *relevance* ['relevance' is the issue for Stage Two] are contained in the attached affidavit of counsel" (emphasis supplied). Although the affidavit appended to the motion does refer to the defendant's "intent" to file a Stage Two submission "setting forth the theories of the defense under which the contents of the records may be relevant," the affidavit is sufficient on which to base a Stage Two determination.

Nothing in the record indicates that BARCC ever sought an additional continuance from the judge or indicated to him any need for more time to respond to the arguments previously made.[11]

3. *The defendant's proffer.* We next consider BARCC's contention that the judge improperly applied the *Fuller* standard in ordering an in camera review of the records, i.e., that the defendant's proffer was insufficient to warrant in camera review. The key point in the affidavit was that the victim had testified at the probable cause hearing that she only formed the opinion that she was raped after speaking with a rape crisis counsellor. The affidavit further stated that the victim testified at the probable cause hearing that she (1) had intercourse with her best friend's boy friend, the defendant, and had not told anyone because she did not want to ruin her friendship with her best friend; (2) vacillated as to whether she "had intercourse" with the defendant or "only oral sex"; (3) was involved in alcohol and drug activity on the night of the alleged incident[12]; (4) lied to her grandmother about the events of that night; (5) continued to socialize with the defendant after the incident, including spending the night of July 3 in his bedroom; (6) was extremely susceptible to manipulation by peer pressure; and (7) was under treatment for depression and had been prescribed Prozac (apparently at the time of the incident).

The dissent would have us disregard many of these factors as ,

[11]Further, we note that BARCC is incorrect when it argues that the judge's conclusion regarding a showing of relevance for in camera review was based on material to which BARCC did not have access, e.g., that the judge's conclusion was based on his "reading of the transcript of the Probable Cause Hearing . . . [,] the affidavit of defendant's attorney in support of the Motion for Review of Complainant's Counselling Records, and the oral representations of both counsel in open Court." The judge based only his privilege determination upon those items (and BARCC does not contest the privilege determination). (See also note 2, *supra*, as to Stage One privilege determination.) The judge states in his memorandum and order of August 15, 1997, that he based his relevance (i.e., Stage Two) determination on the proffer of the defendant.

Concerning availability of the material elsewhere, the judge did consider the accuracy of the victim's memory as evidenced at the probable cause hearing in deciding that a reliable account of the content of the conversation did not exist elsewhere. But the same conclusion as to the accuracy of the victim's memory could be drawn from the material in the affidavit.

[12]Contrary to the dissent's assertion that the court is allowing the mere use of alcohol to abrogate the privilege, alcohol is but *one* of the *many* factors that warrants abrogation of the privilege here. *Post* at 41.

not material or relevant to the issue of consent because they occurred after the night in question. The distinction is not meaningful for the purpose of applying *Fuller*. *When* the other factors occurred in relation to the conversations with the rape counsellor is not the relevant inquiry. The focus, rather, is on whether all (or any) circumstances indicate that the requested information is likely to be relevant and material. Such factors as the victim's susceptibility to peer pressure and her lie to her grandmother increase the importance of her statements to the counsellor. Further, whether such other information (e.g., her lie to her grandmother, her alcohol and drug activity on the night in question) is available from other sources is not the issue; *Fuller* requires only that the information regarding the content of the conversations with the counsellor not be available from other sources. "A motion for the production of rape counselling records should be . . . premised on . . . a showing that the material [in the records] is not available elsewhere." *Commonwealth* v. *Fuller, supra* at 226.

The dissent also seeks to minimize the importance of several of these factors by referring to the certainty of the victim's testimony at the probable cause hearing. But that is not the issue. It is the victim's *prior* uncertainty and her earlier actions inconsistent with the fact of a rape that mandate the conclusion that the proffer was sufficient. For example, the fact that the victim spent a night in the defendant's bedroom less than one week after reporting that he had raped her *must* call into question the validity of the report of rape. The fact that she vacillated between whether she "had intercourse" with the defendant or "only oral sex" also indicates confusion and a conflict with her probable cause testimony. Further, her testimony that she did not reveal the sexual intercourse because she did not want to harm her relationship with her best friend suggests as well that the sexual relations were consensual. If the defendant had raped the victim, such an act is unlikely to harm the victim's friendship with the best friend; it is much more likely to affect the *defendant's* relationship with the best friend.

The affidavit clearly sets forth sufficient factors to support the judge's conclusion that the conversations of the victim, an eighteen year old young woman, with the counsellor were the "turning point" in the case. The victim had been uncertain previously whether she had been raped and she suffered from an impaired memory of the events due to intoxication. Based on

the conversations with the counsellor, she ultimately concluded that she had been raped and criminal proceedings were instituted. The judge accurately considered the "calls" the "turning point" and concluded that a fact finder could well be influenced by the content of these calls which caused the complainant to become certain of her situation. Further, the exact content of the calls is material that may not be obtained elsewhere; the victim was the only other party to the calls and the accuracy of her memory was questionable. The proffer is clearly sufficient to support the judge's determination that there was a good faith, specific, and reasonable basis for believing that the records would contain exculpatory evidence relevant and material to the defense of the case and that this material could not be obtained from other sources.[13] See *Commonwealth v. Fuller, supra* at 226.

The dissent's distinction between the victim's knowledge of the events and her knowledge of their legal import is without significance to the resolution of this case. Regardless of whether the victim knew what happened on the night in question, when a third party affects the victim's concept of whether she has been raped and then, pursuant to that discussion, the victim reports a rape to the police, the defendant cannot constitutionally be denied a right of access to that communication. The accusation arises from that conversation.

The dissent states that our interpretation of the privilege impliedly overrules *Commonwealth v. Fuller,* 423 Mass. 216 (1996), because we have created an exception to the privilege without a showing that such an exception is necessary to protect a defendant's constitutional rights. That is not the case. We agree with the dissent that the Legislature intended the widest scope possible for this privilege. But the dissent acknowledges, as it must, that "even the most well-intended legislation must yield to constitutional norms." *Post* at 38. Accordingly, we are permitting the application of *Fuller* to the extent that is constitutionally permissible. The scope of the privilege, however, must be limited by the constitutional rights of the defendant. That limit has been reached in this case. If communications such as those here at issue are withheld from a defendant on these facts, the defendant's constitutional rights to

[13]Although Megan was present during at least one of the victim's telephone conversations with BARCC, she could not have heard the counsellor's responses to the victim's statements.

due process and to a fair trial are violated. This confluence of factors that indicates the adolescent's emotional state, the level of her uncertainty about what had occurred, and the conditions under which she observed the events, at the very least, suggests a real possibility of a false allegation. Due process and the right to a fair trial are implicated to such a great degree that a statute that prevents the defendant from access to the underlying information and makes the accusation suspect cannot comply with constitutional requirements. We do not read the legislation as doing so and we shall not apply it in such a manner. The statute cannot be applied to deny the defendant a right to learn whether the young woman's conversations with the counsellor are consistent with her accusations against him.

4. *Mass. R. Crim. P. 14.* BARCC contends that the judge improperly ordered the records produced because rule 14 (a) (1) (C) limits discovery to material in the possession, custody, or control of the prosecutor. BARCC maintains that the Appeals Court erred in relying on the provisions of Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979), to permit the defendant to obtain the production of evidence from private third parties. See *Commonwealth* v. *Neumyer,* 48 Mass. App. Ct. 154, 162 (1999). Rule 17 (a) (2) provides that a summons may command the production of documents, but that on motion, the court may quash or modify the summons if compliance would be unreasonable or oppressive or if the summons is being used to subvert the provisions of rule 14. The rule further provides that the court may direct the documents to be produced within a reasonable time prior to trial and permit their inspection and copying by the parties if authorized by law.

BARCC's argument fails. BARCC has made no showing as to how the purpose of rule 14 was subverted; it has only offered a conclusory opinion. The defendant is entitled to obtain evidence needed to prepare his defense. The entire procedure in *Bishop-Fuller* is premised on this right, and is an effort to accommodate the statutory privilege within the right. Because this is the concept underlying rule 17, it is incumbent on one seeking to interfere with this right to demonstrate how the purpose of rule 14 was violated. BARCC has not done so.

5. *Due process claims.* BARCC claims that its due process rights were violated because it did not receive notice and opportunity to be heard at the August 15, 1997, hearing. BARCC has a legal obligation to assert the privilege on behalf of its cli-

ent. See *Commonwealth* v. *Fuller, supra* at 220 n.3. That obligation does not implicate any due process rights. In regard to notice that privileged records were involved, it appears from the docket in this case that notice did issue to BARCC on June 13, 1997, at least to the effect that records of this victim were being sought. Further BARCC was given notice and opportunity to be heard, at both the hearings on November 17, and November 21, prior to the issuance of the order in question.[14]

BARCC further argues that the due process rights of the victim were violated when she testified to the fact and content of the telephone call at the probable cause hearing unaware of her right to refuse to respond to the questions. BARCC contends that the victim was prejudiced thereby because the revelation of the content of the telephone call formed the basis of the judge's determination that the records should be produced.

It is unnecessary to resolve the issue whether BARCC has standing to assert a violation of the victim's due process rights, as no due process rights of the victim were involved. The victim had merely a statutory right to assert the privilege that clearly BARCC may assert in circumstances such as these. The keeper of records in the position of a counselling center "has the obligation to assert a client's privilege as to records in its keeping (unless the privilege has been waived by the client)." *Commonwealth* v. *Fuller, supra* at 220 n.3.[15] Here, BARCC was unaware of the probable cause hearing and the victim herself was hardly in a position to be aware of her rights. Clearly there

---

[14]The judge required the executive director of BARCC to appear on November 17, and permitted BARCC to be heard that day and at a continuation of the hearing on November 21. The judge also permitted BARCC to submit written arguments. There is no indication in the record that BARCC sought any further opportunity to be heard.

The record is unclear as to what, if any, hearing was held prior to the issuance of the contempt order. Because BARCC has not raised an objection in this regard, we do not address it.

[15]This is not in conflict with the holding in *United States* v. *Lowe*, 948 F. Supp. 97, 101 (D. Mass. 1996), that a rape counselling center has no independent standing to assert its client's privilege in the face of the client's waiver. Here there was no valid waiver of the privilege, as the record does not indicate that the client, an uncounselled eighteen year old, had been informed of her rights in regard to the privilege. We further note that, although BARCC argues that G. L. c. 233, § 20J, requires a written waiver, the requirement of written consent applies only to a sexual assault counsellor disclosing the confidential communication, and not to disclosure by the client.

was no waiver.[16] The content of that call was not the basis of
the defendant's proffer or the judge's relevance determination.
See Part 3, *supra.* The revelation of the *fact* of the call (which
we have concluded was not privileged, see Part 1, *supra*), and
the young woman's statements regarding her state of mind (that
she had become certain that she had been raped only after her
consultation with the BARCC counsellor) were sufficient
(without the testimony as to the content of the call) to support
the judge's relevance conclusion. Accordingly, there was no
prejudice to the victim.

6. *Disposition.* The order of the Superior Court is affirmed.
Because criminal proceedings against this defendant have
terminated, there is no longer a need for the records to be
produced. Without denigrating in any way the vital importance
of agencies such as BARCC, we cannot sanction failure to
comply with the law. When the Superior Court judge's order for
production of the records issued, BARCC was obligated to
comply with that order unless and until a stay was issued. The
judge was correct in holding BARCC in contempt and the
penalty imposed is to be paid.

*So ordered.*


Justice Lynch participated in the deliberation on this case, but
retired before the opinion was issued.

ABRAMS, J. (dissenting, with whom Marshall, C.J., joins). The
court impliedly overrules *Commonwealth* v. *Fuller,* 423 Mass.
216 (1996), because its decision today will "result in virtually
automatic in camera inspection for an entire class of . . .
privileged material." *Id.* at 224. Further, the court's decision
contradicts the plain language of G. L. c. 233, § 20J, and
frustrates the clear intent of the Legislature in enacting that
statute.

1. *BARCC's records are neither material nor relevant.* The
defendant's proffer in support of his motion to compel produc-
tion of BARCC's records was insufficient under the standard
this court articulated in *Commonwealth* v. *Fuller, supra.* At the
probable cause hearing, "the victim . . . testified . . . that she
only formed the opinion that she was raped after speaking with
a rape crisis counsellor." *Ante* at 31. The motion judge and the

---

[16]We note that the issue of waiver is not germane to our decision. We
observe, however, that it is unlikely that a child of this age, uncounselled,
*could* voluntarily waive her privilege.

court erroneously view this as the "turning point," *ante* at 32, in the case and conclude that any records documenting the substance of the victim's calls to BARCC's counsellors are relevant and material. The judge and now the court fail to distinguish between the victim's knowledge of events and the victim's understanding of the legal significance of those events.

Nothing in the defendant's proffer or the judge's findings indicates that the victim related a factual narrative of the assault to the rape crisis counsellors different from the facts she related to the police and others. She testified in unequivocal terms that before and after she telephoned the rape crisis center she knew what had happened to her. She just did not know what rape was.[1] As a result of speaking with BARCC's counsellors, the victim's understanding of the *legal significance* of what had happened was clarified.

Victims are not required to recognize the legal significance of an assault,[2] and failure to do so does not suffice as a reason to order the production of privileged records. *Commonwealth* v.

---

[1]The only evidence as to the content of the calls comes from the victim's testimony at the probable cause hearing, which, as I note, *infra*, should never have been allowed. The victim described her conversation with the counsellor as follows:

| | |
|---|---|
| *A.*: | "I called up and said that I thought I had been raped." |
| *Q.*: | "You thought you had been raped?" |
| *A.*: | "Yes." |
| *Q.*: | "Were those the words you used?" |
| *A.*: | "Yes." |
| *Q.*: | "Why did you only think you had been raped?" |
| *A.*: | "Because I didn't know. I didn't know what rape was. I'm not accustomed to this." |
| *Q.*: | "Did you think that maybe something happened but you weren't sure?" |
| *A.*: | "I knew it had happened." |

[2]Victims often are confused about what constitutes a legally cognizable assault, especially when alcohol is involved and the perpetrator is an acquaintance. See Comment, Act 10: Remedying Problems of Pennsylvania's Rape Laws or Revisiting Them?, 101 Dick. L. Rev. 203, 204-205 (1996); Telljohann, High School Students' Perceptions on Nonconsensual Sexual Activity, 65 J. of Sch. Health 107 (No. 3 1995).

*Fuller, supra.* This court has recognized that victims may seek the assistance of rape crisis counsellors before reporting the assault to the police. *Id.* at 222 (rape crisis counselling privilege "supports the reporting of rapes"). See *Commonwealth v. Vasquez,* 27 Mass. App. Ct. 655, 657 (1989). That a victim does so should not provide the reason for being forced to disclose her privileged communications with a counsellor she turns to for assistance. Neither the order to produce BARCC's records nor the order of contempt should have issued, and BARCC should not have been held in contempt.

2. *Scope of the privilege.* As the court has recognized, the Legislature intended that § 20J create an "absolute privilege," not subject to any exception. *Commonwealth v. Two Juveniles,* 397 Mass. 261, 265-266 (1986).[3] The privilege created by § 20J "[b]y its terms . . . clearly promotes . . . important interests," such as encouraging victims of sexual assault to seek treatment, report the crime, and assist the Commonwealth in the prosecution of the perpetrator. *Commonwealth v. Fuller, supra* at 221-222.[4]

The court, however, recognizing that even the most well-intended legislation must yield to constitutional norms, has observed that "the . . . privilege shall be pierced in those cases in which there is a reasonable risk that nondisclosure may result in an erroneous conviction." *Commonwealth v. Bishop,* 416 Mass. 169, 177 (1993). The court circumscribed this narrow, judicially created exception even more tightly in *Commonwealth v. Fuller, supra,* where it cautioned against creating an exception to the privilege that "would make the privilege no privilege at all, and would substitute an unwarranted judicial abridgment of a clearly stated legislative goal." *Id.* at 224.

---

[3]"Section 20J, like few other testimonial privilege statutes (see, e.g., G. L. c. 233, § 20A [1984 ed.] [priest-penitent]), is a statement of absolute privilege. Statutory privileges normally have exceptions, some of which are quite general, and, for that reason, they indicate a less firmly based legislative concern than § 20J does for the inviolability of the communication being protected. . . . Section 20J protects a victim's expectation of privacy and guarantees the preservation of confidentiality *without exception*" (emphasis added). *Commonwealth v. Two Juveniles,* 397 Mass. 261, 265-266 (1986). See *Commonwealth v. Fuller,* 423 Mass. 216, 224 (1996).

[4]This statute is part of what appears to be a concerted effort on the part of the Legislature to address sex crimes in the Commonwealth. See G. L. c. 6, §§ 178C-178O (Sex Offender Registration and Community Notification Act); G. L. c. 123A (providing for care, treatment, and rehabilitation of sexually dangerous persons).

Section 20J explicitly and unequivocally includes *"all infor-mation* received by the sexual assault counsellor *which arises out of and in the course of such counseling and assisting, includ-ing, but not limited to* reports, records, working papers or memoranda" (emphasis added). G. L. c. 233, § 20J. The conclu-sion that "all information" means "all information except the date and time of contact" rewrites the plain language of the statute. So too does the court's conclusion that the date and time of the counselling encounter are not part of information "aris[ing] out of and in the course of . . . counselling." *Ante* at 29, quoting G. L. c. 233, § 20J.

Unlike other privileges that arise from statute, such as the psychotherapist-client privilege, the Legislature chose not to subject the rape crisis counseling privilege to *any* exception.[5] Now, the court has created an exception to the privilege without a showing that it is needed to protect a defendant's constitutional rights. The Legislature has spoken unequivocally, and its intent clearly was to make the scope of the privilege as broad as is constitutionally permissible. The court's decision today creates an exception to § 20J that will result in the automatic release to defendants of information as to the date and time of hotline calls. It requires rape counselling centers to be in court on every case and may prevent victims from seeking help. It is not within the province of this court to create a broad exception where the Legislature has created none and, in so doing, to "substitute an unwarranted judicial abridgment of a clearly stated legislative goal." *Commonwealth* v. *Fuller, supra* at 224.[6]

3. *Other errors.* A number of factors cited by the court in

---

[5]The court's construction of § 20J thus yields the anomalous result that the limiting language in statutes such as G. L. c. 233, § 20B (psychotherapist-client privilege), to which the court analogizes § 20J, is construed so as to have the same meaning as the broader language in § 20J. See G. L. c. 233, § 20B (creating privilege for communications "relative to the diagnosis or treatment of the patient's mental or emotional condition").

[6]Neither the attorneys nor the judge at the probable cause hearing appears to have read the statute. The judge and the prosecutor accepted defense counsel's statement that "[a]ny privilege that would have existed [was] waived by the presence of [the victim's friend]." The Legislature clearly intended that the privilege continue despite the presence of a third individual acting in a supportive role. G. L. c. 233, § 20J (confidential communications include those made in the presence of "a person present for the benefit of the victim"). That defense counsel was allowed to use information gleaned as a result of this misstatement of the law further offends the Legislature's intent in enact-ing § 20J.

support of its decision have no logical connection with BARCC's records.

(1) The night the victim spent in the defendant's bedroom occurred after the victim spoke with the counsellors. Any counselling records would not, therefore, contain reference to this later occurrence. Also, because the defendant admitted to having intercourse with the victim without obtaining her oral consent, see *infra*, this later occurrence is neither material nor relevant to the question of her consent on the night of the assault.

(2) Evidence that the victim was being treated for depression does not provide a reason for compelling production of the records. There is no evidence in the record that depression or the treatment of depression affects an individual's credibility or propensity for prevarication. Cf. *Commonwealth* v. *Bishop, supra* at 185 ("The defendant apparently assumes that a learning disability adversely affects credibility"). The court's citation of the victim's treatment for depression suggests that, when a victim of a sexual assault is being treated for any mental or emotional difficulties, the privilege no longer applies, thus implicitly removing the protection afforded by G. L. c. 233, § 20J, from persons seeking help from psychotherapists or psychiatrists.

(3) There is no reason to believe that the victim's susceptibility to peer pressure was relevant to her understanding of and action on the information given to her by BARCC's counsellors. The counsellors were not the victim's peers, and the record indicates that the victim's peers did not support her reporting the assault.

(4) The defendant admitted to the police that he had sexual intercourse with the victim and that she was so inebriated that she did not give oral consent when he began. Therefore, there is no reason to believe that BARCC's records will shed light on why, or whether, the victim equivocated as to whether vaginal intercourse occurred.

(5) The fact that the victim's recall of events on the night of the assault, when she was inebriated, was spotty offers no support for the materiality or relevance of BARCC's records. There is no proffer that the victim's memory of the assault when talking with BARCC counsellors was different from her memory of those events at the probable cause hearing. See *ante* at note 11. The victim's memory of events *on the evening of the assault* was, as she admitted, impaired because of her inebriation on

that night. During her testimony at the probable cause hearing she was not confused; rather, she was firm in maintaining that there were portions of the evening she simply did not recall.

The court also cites, in support of its conclusion that BARCC's records would be material and relevant, several factors that are not supported by the record or that involve information available from other sources. As the court notes, information available from other sources should not be the subject of an order for production of records privileged under § 20J. *Ante* at 32. See *Commonwealth* v. *Fuller, supra* at 226.

The court writes: "[T]he victim . . . lied to her grandmother about the events of that night . . . ." *Ante* at 31. The hotline conversations did not concern the victim's statements to her grandmother. There were alternative sources for the information, such as the victim's friend who assisted in the lie. See *Commonwealth* v. *Fuller, supra* at 225-226.

The court writes: "[T]he victim . . . was involved in alcohol and drug activity on the night of the alleged incident . . . ." *Ante* at 31. Evidence that the victim was drinking and using marijuana is available from other sources, including from the victim's friend, who testified at the probable cause hearing, and from the victim herself. Because "[a]lcohol is a factor in more than half of all . . . sexual-assault cases,"[7] allowing the fact of alcohol use by a sexual assault victim to abrogate the privilege "make[s] the privilege no privilege at all." *Commonwealth* v. *Fuller, supra* at 224.[8]

4. *Conclusion.* In *Commonwealth* v. *Fuller, supra,* we wrote that "[i]t was not our intention . . . to establish a standard and protocol that would result in virtually automatic in camera inspection for an entire class of extremely private and sensitive privileged material. To do so would make the privilege no privilege at all." The court's decision today abrogates the privilege based on factors that apply in most sexual assault cases, and directly contravenes the Legislature's intent in enact-

---

[7]See A. Quindlen, The Drug That Pretends It Isn't, Newsweek (April 10, 2000).

[8]The court also suggests that the victim had a motive to lie because she "had intercourse with [the defendant,] her best friend's boy friend . . . and had not told anyone because she did not want to ruin her friendship with her best friend." *Ante* at 31. Nothing in the transcript suggests that the victim was referring to consensual intercourse when she indicated she was concerned about her best friend's learning what had occurred.

ing § 20J, the language of the statute, and our cases. Therefore, I dissent. I would vacate the order of contempt.