## COMMONWEALTH *vs.* DAVID FULLER.

Worcester. May 7, 1996. - July 17, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Rape. Evidence,* Privileged communication, Communication between patient and psychotherapist. *Practice, Criminal,* In camera inspection. *Privileged Communication. Due Process of Law,* Access to evidence.

Discussion of the nonconstitutionally based testimonial privilege set forth in G. L. c. 233, § 20J, absolutely protecting against disclosure a rape victim's confidential communications made during therapeutic counseling. [220-223]

This court announced that henceforth, when a defendant charged with rape seeks access to rape counselling records of the complainant that are privileged under G. L. c. 233, § 20J, the judge should undertake an in camera review of those records only upon the defendant's demonstrating in his motion for production of the records a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt; and further, the records should not be summonsed to court until the judge has allowed the defendant's motion. [223-227]

In a rape case, the defendant's threshold showing in support of his motion for production of the complainant's privileged rape counselling records was not sufficient to warrant the judge to make an in camera inspection of the records, and the judge should not have ordered production of any of the complainant's records; accordingly, the judgment of contempt entered against the keeper of those records for her refusal to comply with the order of production was vacated and judgment was to enter in her favor. [227-229]

ADJUDICATION of contempt in the Superior Court Department on March 15, 1996, by *Herbert F. Travers, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael M. Monopoli (Mark Monopoli* with him) for David Fuller.

*Wendy J. Murphy* for Rape Crisis Center of Central Massachusetts.

The following submitted briefs for amici curiae:

*Scott Harshbarger*, Attorney General, *Elisabeth J. Medvedow & Pamela L. Hunt*, Assistant Attorneys General, for the Governor & others.

*Susan M. Basham & Fernando R. Laguarda* for National Network to End Domestic Violence & others.

*S. Stephen Rosenfeld & Amy D. Porter* for Coalition for Patient Rights of New England.

*James T. Hilliard & Jason R. Talerman* for the Massachusetts Psychiatric Society.

*Carol A. Donovan, John F. Palmer & Abbe Smith* for the Committee for Public Counsel Services & others.

*James C. Geoly & Kevin R. Gustafon*, of Illinois, & *Carolyn I. Polowy* of Washington, D.C., for the National Association of Social Workers & another.

*John J. Conte*, District Attorney, & *Christopher P. Hodgens*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. A judge in the Superior Court found the executive director of the Rape Crisis Center of Central Massachusetts, Inc. (center), in contempt for failure to turn over to the court for in camera inspection the rape counselling records of Jane Doe. Doe is the complainant in this case in which the defendant, David Fuller, has been charged with two indictments of rape, in violation of G. L. c. 265, § 22 (*b*) (1994 ed.); one indictment charging indecent exposure, in violation of G. L. c. 272, § 53 (1994 ed.); and one indictment charging lewd and lascivious behavior, also in violation of G. L. c. 272, § 53. In connection with the preparation of his defense, the defendant sought production of Doe's counselling records from the center. The center refused production on the basis that the records were absolutely privileged under G. L. c. 233, § 20J (1994 ed.), the statute protecting from disclosure the records of a victim's counselling sessions with a sexual assault counsellor. A single justice of the Appeals Court stayed the judgment of contempt pending appeal by the center, and we transferred the case to this court on our own motion. Although the judge sought to follow and apply the procedures set forth in *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-183 (1993), we conclude that the order calling for the production of Doe's records was erroneously entered, and we vacate the judgment of contempt. As a general mat-

ter, we continue to adhere to the procedure set forth in the *Bishop* decision for the handling of motions seeking in camera judicial examinations of privileged records. In reliance on our statement in *Bishop,* that a judge should take into account the nature of the privilege claimed, we take this opportunity to modify the procedure to be followed in the consideration of such motions and the standard which a defendant must meet when a motion seeks access to a complainant's rape counselling records. As will be discussed, we shall include in the standard the requirement of materiality as established in our cases.

1. The testimony at the probable cause hearing on the charges may be summarized as follows. On July 11, 1995, the defendant and Doe met in a bar in Grafton. Doe agreed to accompany the defendant in his automobile for a drink at another establishment. Instead of driving to the other establishment, the defendant pulled into the parking lot of the North Grafton post office. There, the defendant made sexually explicit comments which the complainant viewed as threatening. In the next fifteen minutes, the complainant alleges, the defendant forced her to engage in oral sex and attempted to urinate into her mouth. When, in response to a telephone call made by a neighbor, Officer Wayne Tripp and other officers arrived at the scene, the defendant was standing outside of the automobile with his genitals exposed. The defendant claimed that he had stopped to urinate, a claim that was at first supported by the complainant. Officer Tripp, who was known to the complainant, observed that she was upset. He asked if she would like to speak to a female officer. She answered in the affirmative, and, at the police station, gave a statement generally similar to her probable cause testimony. The defendant maintains that any sexual contact between himself and the complainant was consensual.

Through a pretrial agreement, the prosecution disclosed to the defendant that Doe had sought counselling from the center following the incident, and also that she had received similar counselling in 1991 and 1992, after a sexual assault in 1991 involving a different perpetrator. In response to a motion filed by the defendant, which had not been served on the center, a judge in the Superior Court ordered the center to produce all records of Doe's counselling in its possession, in a sealed envelope with an attached letter asserting any privileges which the center claimed. The center's executive director declined to produce the records, and advised the judge

that the records were absolutely privileged under G. L. c. 233, § 20J,[1] and that Doe declined to waive her privilege.

The defendant filed another motion seeking access to the records, asserting, in an affidavit filed by counsel, that "[t]here is a likelihood of exculpatory evidence in the counseling records since [Doe] was allegedly raped in 1991 and puts herself in a similar situation in 1995." In a second affidavit filed in connection with the motion, counsel asserted that "[c]onsent is at issue in the present case," and that the "facts of the present case are very similar to those involved in an incident occurring in 1991." Both affidavits indicated that the defendant's counsel had spoken with "at least two independent witnesses who state that when [Doe] drinks she frequently leaves the premises with men [whom] she has just met in a bar." In connection with a hearing on the motion, the defendant's counsel filed a third affidavit in which he stated that "[t]he alleged victim expressed feelings of embarrassment over being discovered in the parking lot with [the defendant] by [Officer] Tripp at the probable cause hearing."[2]

---

[1]General Laws c. 233, § 20J (1994 ed.), provides, in pertinent part, as follows:

"A sexual assault counsellor shall not disclose such confidential communication, without the prior written consent of the victim; provided, however, that nothing in this chapter shall be construed to limit the defendant's right of cross-examination of such counsellor in a civil or criminal proceeding if such counsellor testifies with such written consent.

"Such confidential communications shall not be subject to discovery and shall be inadmissible in any criminal or civil proceeding without the prior written consent of the victim to whom the report, record, working paper or memorandum relates."

A "confidential communication" is defined in the statute as "information transmitted in confidence by and between a victim of sexual assault and a sexual assault counsellor by a means which does not disclose the information to a person other than a person present for the benefit of the victim, or to those to whom the disclosure of such information is reasonably necessary to the counseling and assisting of such victim. The term includes all information received by the sexual assault counsellor which arises out of and in the course of such counseling and assisting, including, but not limited to reports, records, working papers or memoranda."

[2]At the probable cause hearing, the complainant testified that she had known Officer Tripp since she had been in the sixth grade, when they went to school together. She did not know him well. She also testified that, when the police arrived, she felt "embarrassed, humiliated, and scared." Her testimony can be read as indicating that she was embarrassed to be found in suggestive circumstances with the defendant by someone she knew.

On that basis, defense counsel asserted that "[s]uch embarrassment may have provided [Doe] with a motive to lie," and, as a result, "[t]here is a probability that evidence which is relevant to the issue will appear in the counseling records of [Doe]."

The prosecutor opposed the defendant's motion for the production of Doe's counselling records on the ground that the 1991 sexual assault was "wholly irrelevant," particularly because the perpetrator involved in that incident had entered guilty pleas to all charges, and had been incarcerated. The prosecution also argued with respect to all the records that the defendant had not made an adequate showing to support his assertion that the privilege conferred by § 20J should be pierced.

In a written memorandum of decision, the judge ordered the center to produce a complete copy of its records concerning Doe from 1991 through the present. The judge stated that the records might show that Doe "may have been too embarrassed to tell [Officer] Tripp that she [had] consented to oral sex with the defendant," and that the records of counselling related to the 1991 incident "may be relevant to show [Doe's] propensity to lie." The judge concluded that "the defendant has shown a legitimate need for access to the records regarding [Doe's] unreliability as a witness" and that, based on the *Bishop* case, an in camera review of the records was appropriate. The center's executive director refused to comply with the production order. The judgment holding her in contempt, and this appeal, followed.

2. The center argues that the absolute privilege conferred by § 20J is based on a constitutionally protected privacy interest "in avoiding disclosure of personal matters." *Whalen* v. *Roe*, 429 U.S. 589, 599 (1977).[3] Reasoning from this basis, the center goes on to argue that this court "must provide

[3]As keeper of the records, and the entity to whom the subpoena duces tecum was addressed, the center has the obligation to assert the privilege provided by § 20J on behalf of its clients. See *Matter of a Grand Jury Subpoena*, 411 Mass. 489, 493, 496-499 (1992) (keeper of privileged records is expected to assert privilege on behalf of client); *Commonwealth* v. *Collett*, 387 Mass. 424, 430 (1982). We take this opportunity to remind the trial court that, since a keeper of records in the position of the center has the obligation to assert a client's privilege as to records in its keeping (unless the privilege has been waived by the client), a keeper of records should receive notice and be given an opportunity to be heard when a defendant seeks access to a client's records.

greater protection against disclosure of [constitutionally protected therapeutic counselling] information than [is provided] for the marital communication disqualification, the attorney/client privilege, [the] surveillance location privilege and [the] informant privilege which are derived only from the common law." The center argues, first, that disclosure of such records should be foreclosed in all circumstances. In the alternative, the center calls for a "strict scrutiny analysis" which would require a defendant credibly to demonstrate that (1) the witness whose privileged material is at stake has undertaken intentionally to distort the truth-finding process, and (2) the defendant has a compelling need for access to particular information.

Victims of rape are encouraged by sexual assault counsellors to explore their personal feelings and perceptions about a form of physical violation which, by its nature, is unusually traumatic to a victim's psyche. See, e.g., Note, The Constitutionality of an Absolute Privilege for Rape Crisis Counseling: A Criminal Defendant's Sixth Amendment Rights Versus A Rape Victim's Right to Confidential Therapeutic Counseling, 30 B.C.L. Rev. 411, 421-428 (1989). Cf. *Jaffee* v. *Redmond*, 116 S. Ct. 1923, 1928 (1996) (noting need for full disclosure in psychotherapy, and observing that "disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace"). We may reasonably assume that the Legislature's choice to afford in § 20J an absolute privilege for records of such counselling reflects, among other considerations, the personal and intimate nature that records of sexual assault counselling will almost certainly possess. Moreover, "revelation of privileged information adversely affects the purposes underlying the need for the confidential relationship and serves as a disincentive to the maintenance of such relationships." *Commonwealth* v. *Bishop*, 416 Mass. 169, 176 (1993). If clients cannot be given a reasonable assurance of confidentiality, they may not feel able to make full disclosure to a counsellor, or they may forgo altogether the benefits of counselling. See *Commonwealth* v. *Collett*, 387 Mass. 424, 428 (1982).

By its terms, the privilege clearly promotes two important interests. First, it encourages victims of the brutal and degrading crime of rape to seek professional assistance to alleviate the psychological scarring caused by the crime, which may be

more damaging than the physical invasion itself.[4] Second, the privilege supports the reporting of rapes, which, as the note below indicates, occur in considerable numbers,[5] but frequently are not disclosed, because the victim may feel shame about the assault and may not be able to face the grueling nature of the adversary process that occurs at trial.

There is some support in Federal case law for the existence of a constitutionally protected "interest in avoiding [the governmentally compelled] disclosure of personal matters." *Whalen* v. *Roe*, 429 U.S. 589, 599 (1977). However, "[t]he precise nature and scope of the . . . right is rather ill-defined," *Harris* v. *Thigpen*, 941 F.2d 1495, 1513 (11th Cir. 1991), and, for the most part,[6] what might be termed a right of confidentiality has been asserted as to information or records factually different from the class of records involved here. At least three State courts have concluded that a defendant has no constitutional right to obtain access to absolutely

---

[4]To deal with these problems, the rape victim must have complete confidence and trust in the counsellor who hears the victim's disclosures. "A rape victim suffers an invasion of her bodily privacy in an intensely personal and unsettling manner, triggering a number of emotional and psychological reactions. . . . [T]he term 'rape trauma syndrome' has developed to encompass the recurring pattern of post-rape symptoms." *Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 38 (1981) (Larsen, J., dissenting).

[5]"Rape is a crime that is often hidden, underrecognized, underreported, and underdocumented. The National Women's Study estimated that there were 683,000 forcible rapes of adult women in 1991; 22% of rapes were by strangers; and 16% were reported to the police. Significant numbers of adolescents and children are the victims of sexual assaults, often involving multiple encounters." (Footnotes omitted.) Gostin, HIV Testing, Counseling, and Prophylaxis After Sexual Assault, 271 JAMA 1436, 1436 (1994).

[6]In *Caesar* v. *Mountanos*, 542 F.2d 1064, 1067-1068 (9th Cir. 1976), cert. denied, 430 U.S. 954 (1977), without extensive discussion, the court concluded that the right of privacy in the doctor-patient relationship, recognized in *Roe* v. *Wade*, 410 U.S. 113 (1973), extended to patient-psychotherapist communications. The *Mountanos* decision construed the right of privacy recognized in *Roe* v. *Wade* more broadly than have other courts. In the recent case of *Jaffee* v. *Redmond*, 116 S. Ct. 1923, 1931 (1996), the United States Supreme Court recognized a "psychotherapist privilege" as a matter of Federal common law, without considering whether a patient's right to confidentiality in communications with a therapist had a constitutional basis. We have some doubt about the continuing vitality of the *Mountanos* decision, which, in any case, recognized a conditional privilege that must yield to a State's compelling interest in ensuring "that truth is ascertained in legal proceedings." *Caesar* v. *Mountanos, supra* at 1069.

privileged records. See *People* v. *District Court,* 719 P.2d 722, 727 & n.3 (Colo. 1986) (en banc); *People* v. *Foggy,* 121 Ill. 2d 337, cert. denied, 486 U.S. 1047 (1988); *Commonwealth* v. *Wilson,* 529 Pa. 268, 285, cert. denied sub nom. *Aultman* v. *Pennsylvania,* 504 U.S. 977 (1992). In the case of *Commonwealth* v. *Two Juveniles,* 397 Mass. 261, 266 (1986), we referred to the privilege conferred by § 20J, as a "nonconstitutionally based testimonial privilege," in the absence of any contrary contention on the point by the parties in the case.

We need not decide at this time whether a complainant has a constitutionally protected "right of confidentiality" in records of sexual assault counselling because "[m]ost of the courts finding a right of confidentiality ha[ve] used a balancing test to assess violations of that right," *Borucki* v. *Ryan,* 827 F.2d 836, 848 (1st Cir. 1987), balancing the interest or need for disclosure against the interest asserted by, or on behalf of, the individual whose privacy is at risk of invasion. See, e.g., *United States* v. *Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir. 1980). The opposing interests at stake in this case are, of course, well-established due process rights of an accused, protected by the Constitutions of the United States and of the Commonwealth, see *Pennsylvania* v. *Ritchie,* 480 U.S. 39, 56-58 (1987); *Commonwealth* v. *Stockhammer,* 409 Mass. 867, 883-884 (1991), to gain access to evidence "shown to be relevant and likely to be significant" or material to his defense, and to use that evidence to confront witnesses and to challenge the validity of the Commonwealth's case. See *Commonwealth* v. *Two Juveniles, supra* at 266. See also *Commonwealth* v. *Bishop, supra* at 175-176. While the counselling function is not aimed at obtaining information relevant to a criminal prosecution, there have been instances in which information contained in privileged records has affected the course or outcome of a prosecution. We remain of the opinion "that in *certain* circumstances a defendant must have access to . . . records [protected under § 20J] so as not to undermine confidence in the outcome of trial." *Id.* at 176. See *Commonwealth* v. *Two Juveniles, supra.*

3. As this court observed in *Bishop, supra* at 177, our (elusive) goal in cases of this general nature has been to articulate a standard that will, to the extent possible, result in the abrogation of a privilege only "in those cases in which there is a reasonable risk that nondisclosure may result in an erroneous conviction." In the *Bishop* opinion, after experience with other approaches, we attempted to fashion a test and

protocol that would strike the proper balance between the rights involved. It appears that difficulty has arisen in application of the standard articulated in *Bishop*. Relying on the extended discussion of the various standards governing disclosure discussed in the *Bishop* opinion, *supra* at 178-179, some judges have concluded that a defendant must make a substantial threshold showing to obtain in camera inspection of privileged records. Other judges, presumably reasoning that the term "relevant" in the context of discovery is given an exceedingly broad meaning, see J.W. Smith & H.B. Zobel, Rules Practice at 206-207 (1975), have concluded that a minimal threshold showing will suffice to justify in camera review. In addition, because the records at issue in *Bishop* were protected by a qualified, as opposed to an absolute, privilege, see *Commonwealth* v. *Bishop*, *supra* at 174 & n.2, questions have been raised whether the *Bishop* procedures apply across the board to all records as to which a privilege is asserted. Here, for example, relying in part on the decision in the *Two Juveniles* case, the judge concluded that the absolute character of the privilege conferred by § 20J required him to consider whether the defendant had demonstrated a "legitimate need" for records related to the complainant's sexual assault counselling. Nonetheless, his determination that an in camera review was warranted appears also to depend on a finding, presumably made under the *Bishop* standard, that the material in the records is "likely to be relevant to an issue in the case."

4. In our view, the decision in *Bishop*, considered in conjunction with the decision in *Commonwealth* v. *Rape Crisis Program of Worcester, Inc.*, 416 Mass. 1001 (1993) (which was released with *Bishop*), plainly indicates that this court intended the *Bishop* standard and protocol to apply when a defendant seeks access to any privileged records, including those protected by § 20J. It was not our intention, however, to establish a standard and protocol that would result in virtually automatic in camera inspection for an entire class of extremely private and sensitive privileged material. To do so would make the privilege no privilege at all, and would substitute an unwarranted judicial abridgment of a clearly stated legislative goal.

During sexual assault counselling, a client may be encouraged to discuss the facts of the assault. She almost certainly will discuss her feelings about the assault and about the perpetrator. As a result, "where § 20J applies, the very cir-

cumstances of the communications indicate that they are likely to be relevant" to an issue in the case. *Commonwealth v. Two Juveniles, supra* at 269. In camera review, while less intrusive than public disclosure or disclosure to a defendant's attorney, is nonetheless a substantial invasion of the privacy of a complaining witness. See *Commonwealth v. Collett,* 387 Mass. 424, 438 (1982). A literal application of the relevancy standard in *Bishop* to records protected by § 20J almost invariably will result in an order requiring production of the records for in camera review even though the likelihood that the records will contain information that would help a defendant avoid an erroneous conviction fairly may be characterized as remote. (This case, as we shall discuss subsequently, illustrates this risk.) We conclude, for these reasons, that the "likely to be relevant" standard is too broad and flexible when applied to records protected by § 20J.

5. In considering what alternative standard might better balance a complainant's privacy concerns against a defendant's need for exculpatory information, we start with the presumption, buttressed by the demonstrated legislative concern for the inviolability of the privilege, that disclosure, even in the limited form of an in camera inspection, should not become the general exception to the rule of confidentiality. As has been previously noted, the purpose of sexual assault counselling is not to gather evidence for prosecution, but to mend a damaged psyche. Unlike some other kinds of records,[7] rape counselling records are not particularly likely to contain information relevant and material to the question of an accused's innocence or guilt that will not be available from another source, such as a complainant's statement to the police. Nonetheless, it would appear, from the record in this case, that defense counsel routinely seek in camera review of a complainant's rape counselling records on the theory that the records may contain information that will be useful in preparing a defense, and that requests for these records are filed with other criminal discovery motions at the outset of a

[7]Some privileged records are more likely than are records of rape counselling to contain material evidence bearing on the question of an accused's innocence or guilt. For example, in *Commonwealth v. Figueroa,* 413 Mass. 193 (1992), *S.C.,* 422 Mass. 72 (1996), the defendant sought access to records of the Department of Mental Retardation consisting of psychiatric and psychological evaluations of a mentally retarded complainant whose capacity to perceive and remember might have been impaired.

case.[8] Rape counselling records should not be summonsed to the court (in contrast to what happened in this case, see note 8, *supra*) until a defendant has filed a written motion seeking their production and explaining in detail his reasons for doing so, and a judge has ruled on the motion in the defendant's favor. A motion for the production of rape counselling records should be the last step in a defendant's pretrial discovery, premised on defense counsel's analysis of the Commonwealth's case and counsel's own investigation of the matter and a showing that the material is not available elsewhere. See note 3, *supra*.

A judge should undertake an in camera review of records privileged under § 20J, only when a defendant's motion for production of the records has demonstrated a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt.[9] By "material evidence" we mean evidence which is not only likely to meet criteria of admissibility, but which also tends to create a reasonable doubt that might not otherwise exist. *Commonwealth v. Gallarelli*, 399 Mass. 17, 21 (1987), and cases cited. For example, a credible showing that a complainant previously had fabricated allegations of sexual assault, see *Commonwealth v. Bohannon*, 376 Mass. 90, 92-96 (1978), *S.C.*, 385 Mass. 733 (1982),[10] or a showing of bias against the defendant, or credible information tending to suggest that the complainant has difficulty distinguishing fantasy from reality, might warrant in camera inspection of a complainant's rape counselling records. We emphasize, however, that there is to be no "unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable [the defendant] to impeach the witness." *Com-*

[8]Here, the indictment against the defendant was returned on December 12, 1995. Defense counsel filed a motion for disclosure of counselling or psychotherapy records on January 16, 1996, on the same day he filed other preliminary defense motions. He renewed the motion for disclosure of counselling records, with a supporting affidavit, on February 7, 1996. The records were summonsed to the court before any hearing was held on the motion for in camera review and before the judge determined that review was warranted.

[9]For records protected under § 20J, this standard replaces "Stage 2" in the *Bishop* opinion. See *Commonwealth v. Bishop*, 416 Mass. 169, 181-182 (1993).

[10]We note, however, that *Commonwealth v. Bohannon*, 376 Mass. 90 (1980), *S.C.*, 385 Mass. 733 (1982), did not involve a privileged record.

monwealth v. *Bishop, supra* at 182, quoting *People* v. *Gissend-anner,* 48 N.Y.2d 543, 549 (1979).

We are not concerned that this more stringent standard improperly limits a defendant's Federal or State constitutional rights to due process. As we observed in *Bishop,* most courts that have addressed the issue of a defendant's access to privileged records have required a threshold showing before a privilege is abrogated. See *Commonwealth* v. *Bishop, supra* at 178 n.5. See also *People* v. *Stanaway,* 446 Mich. 643, 670-673 (1994), cert. denied sub nom. *Michigan* v. *Caruso,* 513 U.S. 1121 (1995) (collecting cases). As has also been pointed out, *supra* at 222-223, some courts, however, have concluded that a defendant has no constitutional right to obtain access to absolutely privileged records. The standard we adopt in this decision to describe the threshold showing a defendant must make to obtain access to sexual assault counselling records is substantially similar to that adopted by the better reasoned decisions that have considered this difficult issue. In its application, it should not differ significantly from the "legitimate need" standard of the *Two Juveniles* case. The Federal and the State Constitutions do not require a more liberal right of access to absolutely privileged records.

6. We turn, finally, to the propriety of the judge's order in this case. As justification for in camera review of the records of Doe's counselling in the wake of the 1991 assault, the defendant pointed to certain similarities between her account of the assault in 1991 and her allegations in 1995. He sought access to Doe's 1995 counselling records on the ground that embarrassment at being discovered in a compromising situation by someone she knew (Officer Tripp) might have given her a motive to lie about a consensual sexual encounter. The records (presumably those from 1995), he suggested, might "contain relevant evidence concerning the feelings of embarrassment, humiliation and low self-esteem [Doe] experienced as a result of 'getting caught.' " The judge's order justified in camera review on the ground that the defendant had identified a credible motive for fabrication by the complainant, and the 1991-1992 records, as well as the records related to the defendant's alleged assault, might "be relevant to show the [Doe's] propensity to lie." In our view, this threshold showing was not sufficient to warrant in camera inspection of Doe's counselling records.

The Commonwealth established in its submission in opposition to the defendant's motion for access to the records

that the perpetrator in the 1991 incident pleaded guilty and was incarcerated for his assault on Doe.[11] It follows that Doe's statements about this assault were credible, see *Commonwealth* v. *Bishop, supra* at 186. As a general matter, it is difficult to conceive what could be revealed in records of counselling for an earlier incident that would be relevant and material to a second allegation of rape, by a different perpetrator, four years later. To the extent it is suggested that details from the earlier incident may have colored Doe's account of the defendant's conduct in 1995, the police reports of the 1991 and 1995 incidents furnish an adequate basis for framing this contention.

The defendant's justification for in camera inspection of the 1995 records was also clearly insufficient. The defendant may have shown that the complainant had a motive to lie (although that showing is not very persuasive), but he has not shown that records of Doe's counselling are likely to contain information on this point that is not available in her statement to the police and her testimony at the probable cause hearing. In every case in which consent is raised as the defense, a defendant will be able to assert that the complainant's records may contain information bearing on a motive to lie. If this were treated as a sufficient showing to justify in camera inspection, no assurance of confidentiality could be offered to any complainant who alleged rape. The Federal and State Constitutions do not mandate this result, nor could the Legislature have intended it. We conclude that the judge should not have ordered production of any of Doe's records on this showing.

7. As has been previously noted, see note 3, *supra,* a keeper of records in the center's position is expected to assert its client's interest in the confidentiality of records in its possession. See *Matter of a Grand Jury Subpoena,* 411 Mass. 489, 496-497 (1992). If the objections raised to disclosure are sustained on appeal, the citation of contempt is to be expunged. *Id.* at 498-499. The order for production of Doe's records is vacated. The order adjudging the executive director of the center in contempt, and the judgment of contempt, are

---

[11]The perpetrator in the 1991 incident pleaded guilty to charges of rape and indecent assault and battery and received a sentence of five years in the Massachusetts Correctional Institution, at Concord.

vacated. Judgment is to be entered for the executive director and the center on the contempt proceeding.

*So ordered.*