Agnes, A.J.
1. On December 23, 2002, this court filed a Memorandum of Decision and Order in the above case in which the Women’s Resource Center (WRC) was ordered to produce certain records which had been summonsed into court on a previous day as a result of several orders from the court. The factual and legal background of that matter is set forth in the court’s decision of December 23, 2002 and will not be repeated here. The records that were the subject of that December 23rd decision consist of a certified copy of the WRC’s records relating to the named victim in the above criminal case, showing the dates and times of any counseling or treatment sessions but with the substance of any communications contained therein redacted. Thereafter, based on the determination made by several judges that the said records did not contain any privileged material and were relevant, this *152 court entered a further order that WRC was in contempt for its willful refusal to produce those records.[1] The court stayed its order to permit WRC to appeal, and a further stay pending appeal was granted by the Appeals Court. See Commonwealth v. Valverde, 2003-J-0027. That matter is now before the Appeals Court.
2. Thereafter, the defendant filed the instant motion supported by an affidavit of Leanne Emerton in support of its request for the court to order WRC to produce an unredacted copy of the records of the alleged victim in the underlying criminal case. Neither the defendant nor the Commonwealth challenges the representation by the WRC that the records in question are subject to the Rape Counselor Privilege under G.L.c. 233, §20J. Based on what has been presented about the nature of the communications in question both in this and in prior proceedings, I find that the records in question are subject to the §20J privilege. The defendant maintains that he has made a sufficient showing under Commonwealth v. Fuller, 423 Mass. 216, 226 (1996), to warrant the court in ordering that the records be produced for a Stage Two, in camera inspection under the protocol established in Commonwealth v. Bishop, 416 Mass. 169 (1993).
3. The facts essential to a decision in this case are not in dispute. The alleged victim’s grandmother told an investigator for the defense that her sixteen-year-old granddaughter, the alleged victim, met the nineteen-year-old defendant on a telephone chat line. After several conversations, they decided to meet in person at Riverfront Park, in Lawrence. The grandmother was not aware her granddaughter was having such conversations, or that she had arranged to meet the defendant. The grandmother also said that she overheard the alleged victim tell the police that the defen-, dant asked her for drugs, and then dragged her into the bushes, struck her in the face, removed her clothing, and raped her. The defendant maintains that the pair had consensual sexual intercourse. The alleged victim told the police that the defendant ejaculated inside her and was not wearing a condom. She had a pregnancy test at the Lawrence General Hospital and was given pregnancy prevention medication. According to medical records from the hospital, the alleged victim had her last menstrual period about 9 days before the alleged offense. The grandmother also informed the defendant’s investigator that her granddaughter attended counseling for about 3 weeks at WRC, but then did not want to attend any longer and creased counseling.
4. The defendant maintains that at trial he will offer evidence that the alleged victim had a motive to lie about the consensual nature of the encounter with the defendant due to her fear of becoming pregnant, and that access to the records “are likely to bolster the defendant’s theoiy . . . The fact that the complainant attended counseling for only three weeks after the sexual encounter, as her grandmother has stated, is consistent with the defendant’s theory: if the complainant last menstruated nine days prior to the sexual encounter, as documented in the medical records, she would have been due to have her next period exactly three weeks later . . . The complainant’s decision to terminate counseling right at the time she would have begun her next period suggests that her only concern was whether or not she got pregnant and that the counseling itself was no longer necessary once that sole concern was allayed. There is a significant likelihood that the complainant discussed her concerns surrounding a possible pregnancy and how she might handle that situation with her rape counselor.” Defendant’s Motion at 3-4, citing cases which have taken judicial notice that the normal menstrual cycle of a female is 28 days.
5.Under the controlling precedents, the question is whether the defendant has demonstrated a “good faith, specific, and reasonable basis for believing that the [rape counseling] records will contain exculpatory evidence which is relevant and material to the issue of the defendant’s guilt.” Commonwealth v. Fuller, 423 Mass. 216, 225-26 (1996).[2] The defendant has advanced a specific claim, it is certainly a claim that appears to be made in good faith in view of the nature of the defense, but the defendant has not demonstrated that it is reasonable to believe that the records in question “will contain exculpatoiy evidence which is relevant and material to the issue of the defendant’s guilt.” Commonwealth v. Fuller, 423 Mass. 216, 225-26 (1996). It is entirely possible that the defendant’s theoiy of the case is correct. Yet it is at least as likely that the alleged victim ceased her counseling sessions with WRC for reasons other than her realization that she was not going to become pregnant. The defendant has not offered any direct evidence that the alleged victim was specially concerned about becoming pregnant, or the impact that such a development would have on her relationship with her grandmother. That is an inference drawn by the defendant from the fact that she had a pregnancy test and received certain medication at the hospital. However, a woman’s fear that she might become pregnant as a result of a sexual encounter with a man is not inconsistent with the existence of rape, as opposed to consensual sex, and it does not make the likelihood of a consensual sexual encounter any greater. See Commonwealth v. Poitras, 55 Mass.App.Ct. 691, 695 (2002). Contrast, Commonwealth v. Neumyer, 432 Mass. 23, 27 (2000). See also Commonwealth v. Llorca, Bristol Couniy Superior Court No. 96296 (May 9, 1997) (Rivard-Repoza, J.) (7 Mass. L. Rptr. 373).
ORDER
For the above reasons, the defendant’s motion for an in camera inspection of privileged records in the custody of WRC is DENIED.

 In that case, the court ruled that when “(1) the defendant reports that his discovery is complete, (2) the information *153 sought is described with specificity, (3) two judges have independently ruled that the Information sought under the Bishop-Fuller protocol is likely to be relevant to a live issue in the case, and (4) it is conceded by the parties and the WRC that the information that is the subject of the court’s order of December 23, 2002 is not subject to a privilege, the willful refusal of the WRC to comply with a lawful order of the court does not present a meritorious issue and warrants a finding and judgment of contempt.”

 “In our Fuller opinion, we undertook to set forth a better standard and to prescribe better procedures than we had in our Bishop opinion to be used when an alleged victim’s privacy concerns must be balanced against a defendant’s asserted needs for exculpatory information. We said that we did not want a standard that would result in virtually automatic in camera inspection for an entire class of extremely private and sensitive privileged material. We, therefore, required that, before a judge should undertake an in camera review of privileged records, the defendant must demonstrate a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence that is relevant and material to the defendant’s guilt.” Commonwealth v. Tripolone, 425 Mass. 487, 489 (1997) (quotations omitted).