## Commonwealth *vs.* Derek Kawa Lam.

Suffolk. January 4, 2005. - May 13, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Indecent Assault and Battery. Subpoena. Practice, Criminal,* Standing, Subpoena duces tecum. *Evidence,* Relevancy and materiality.

In a petition for relief brought by the Commonwealth pursuant to G. L. c. 211, § 3, from the allowance by a judge in the District Court of a criminal defendant's motion for issuance of certain summonses to third parties under Mass. R. Crim. P. 17 (a) (2), in connection with charges pending against the defendant for indecent assault and battery on a child, this court concluded that the Commonwealth had standing to challenge the issuance of the summonses [228-229]; further, this court affirmed those portions of the judge's order issuing summonses for materials that had direct relevance to the case and, apart from speculative objections, clear evidentiary value [229-233].

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on February 20, 2004.

The case was reported by *Cowin,* J.

*Varsha Kukafka,* Assistant District Attorney, for the Commonwealth.

*Paul Ming Yee* for the defendant.

Marshall, C.J. Before a single justice in the county court, the Commonwealth petitioned for relief pursuant to G. L. c. 211, § 3, from the allowance by a judge in the District Court of a motion for issuance of certain summonses requested by the defendant pursuant to Mass. R. Crim P. 17 (a) (2), 378 Mass. 885 (1979), in connection with charges pending against him for indecent assault and battery on a child. The defendant has asserted that the summonses are necessary to his defense, that the Commonwealth lacks standing to challenge the issuance of the summonses, and that the judge's allowance of the motion was proper. The single justice reserved the case and reported the

matter to the full court, noting two issues: "(1) On this record, does the Commonwealth have standing to appeal or otherwise seek review of the District Court judge's order granting leave for the summonses to issue in this case? (2) If so, was the judge's action proper?" We conclude that the Commonwealth has standing to challenge the issuance of rule 17 (a) (2) summonses. We affirm in part and vacate in part the order allowing the motion for the issuance of the summonses. We remand the case with instructions that, as to those portions of the order allowing the motion for the issuance of the summonses that are vacated, the defendant's motion be denied without prejudice. We further conclude that the defendant may resubmit a motion for the issuance of summonses in a manner that comports with *Commonwealth* v. *Lampron*, 441 Mass. 265, 268-271 (2004) (*Lampron*). See *Jansen, petitioner, ante* 112, 116-120 (2005).

1. *Background.* We summarize the relevant facts from the record submitted on the report of the single justice. The defendant was charged with four counts of indecent assault and battery on a child under the age of fourteen years, in violation of G. L. c. 265, § 13B. The complainant, a neighbor of the defendant, was twelve years of age at the time of her complaint. She alleged that she had been sexually assaulted by the defendant, in the defendant's home, when she was nine and ten years of age. Criminal proceedings against the defendant began after the complainant disclosed her allegations to two of her classmates (one by Internet chat, and the other in a conversation at school) and met with a school counsellor and counselling intern.

In interviews and statements, the complainant told police that she had suffered abuse by the defendant on several dates while she was in the fourth grade and once in the fifth grade, in 1999 and 2000. The defendant, who has a son approximately the same age as the complainant and who regularly drove the complainant and his son to their elementary school, told the police that, while he had physical contact with his neighbor, including kissing her on the cheek, sitting with her on his lap,

and throwing her into the air in a playful manner, he did not assault her as she had alleged.[1]

During pretrial discovery, the defendant learned that as part of the complainant's disclosure to the police, she had produced a statement in the form of a journal entry,[2] detailing certain abuse she claimed to have suffered at the hands of the defendant. The same statement revealed the complainant's statements that her "parents didn't love" her, that she was "depressed," and that she felt excessive pressure from her parents, who "always expected" her to "be the best." The same document detailed the complainant's grief about the recent death of her grandmother. Defense counsel submitted two signed affidavits summarizing additional information produced through discovery. In defense counsel's opinion, the discovery documents contained hints that the complainant's parents might be collaborating with the prosecution in an effort to avoid any action against them by the Commonwealth.

After reviewing the discovery documents, defense counsel focused on the possibility that the complainant had fabricated her allegations. As stated in defense counsel's supplemental affidavit:

> "The defense theory is that the complainant is stressed by her home life, i.e., the death of the complainant's grandmother and her parents' high expectations for her to do well academically . . . she is mentally unstable, and she is, therefore, unreliable with respect to her allegations of sexual abuse against the defendant. Also, the defense theory is that the DSS records will tend to show that the complainant's parents are cooperating with the prosecution of this untrue case against the defendant due to their own exposure to potential criminal and/or civil liability, if they were not to cooperate."

---

[1]We include this information for background purposes only. The defendant's statement was made at the police station after the defendant, according to the police report, had been informed of and had waived his Miranda rights. We need not, and do not, decide here whether the defendant's statement will be admissible at his trial.

[2]The complainant's statement bears the date December 25, 1999. However, handwriting other than the complainant's on the document states: "This is *NOT* a journal entry. This is a document [the complainant] recreated when being interviewed by police." (Emphasis in original.)

Approximately six months after the issuance of the criminal complaint against him, and before a trial date had been set, the defendant moved for issuance of summonses pursuant to rule 17 (a) (2), seeking extensive production from numerous sources of documents that defense counsel believed to contain information relevant to the defendant.[3]

In affidavits supporting his motion for issuance of the summonses, defense counsel asserted that each of the requested records would be relevant and material. Defense counsel further insisted that he had no other means to obtain the requested records and that he had good reason to fear destruction of the records, because the journal and notes of the SAIN[4] interview had been destroyed, and because electronic records are easily deleted.

---

[3]The defendant's request for production from numerous sources of documents believed to contain information can be summarized as follows:

(1) from the complainant's middle school, where she was currently a student, (a) all documents concerning sexual abuse allegations raised by the complainant and (b) the complainant's attendance and scholastic records;

(2) similar documents from the elementary school the complainant had attended at the time of the alleged abuse;

(3) from the complainant's father, (a) the complainant's journals, (b) statements or e-mails of the complainant concerning sexual abuse, (c) names and addresses of anyone providing mental health services to the complainant, and the dates of such service, (d) "false" statements of the complainant concerning sexual abuse, (e) statements by the complainant's parents concerning the complainant's allegations of sexual abuse;

(4) from the Department of Social Services (department), all documents relating to the complainant's allegations of sexual abuse; and

(5) from the parents of two of the complainant's friends, any written or electronic statements of the complainant concerning sexual abuse or molestation or "the general subject matter or topic of sex."

[4]A Sexual Abuse Intervention Network (SAIN) interview represents an effort to reduce the burden on a young abuse complainant. When a SAIN interview is conducted, members of several different agencies may be present. Normally, representatives of one or more agencies interview the child, while the representatives of other agencies watch from behind a mirrored window. The complainant's interview was conducted by an assistant district attorney, a victim witness advocate, and a department investigator. Two detectives were in attendance.

A District Court judge allowed the motion for issuance of the summonses. The Commonwealth's motion to reconsider was denied.[5] The Commonwealth sought emergency relief from the single justice. Shortly thereafter, we decided *Lampron, supra,* where we discussed for the first time the test that must be satisfied before a court orders the issuance of rule 17 (a) (2) summonses.

2. *Discussion.* We discuss, as a preliminary matter, why the Commonwealth has standing to challenge the issuance of rule 17 (a) (2) summonses and, second, why in these circumstances it is appropriate to allow a portion of the defendant's motion, and to deny the remainder without prejudice.

a. *Standing.* In response to the defendant's challenge to the Commonwealth's standing to object to his motion for issuance of summonses, the Commonwealth responds that it has an interest in ensuring compliance with the prohibition on a party's attempt to use rule 17 (a) (2) as a "discovery device" or for a "fishing expedition." See *Lampron, supra* at 269-270. The Commonwealth also argues that it has an interest in protecting its witnesses, avoiding the burden on third parties of having to hire their own counsel, preventing the undue lengthening of trial, and avoiding overemphasis on the complainant's credibility.

A majority of courts interpreting Fed. R. Crim. P. 17 (c), on which our rule 17 (a) (2) is based, *Lampron, supra* at 270, have allowed the government to challenge the issuance of subpoenas duces tecum to third parties.[6] See *United States* v. *Hardy,* 224 F.3d 752, 755-756 (8th Cir. 2000) (affirming magistrate judge's allowance of government's motion to quash subpoena duces

[5]The Commonwealth's motion to reconsider contended that the defendant's motion was untimely, that his requests were not sufficiently specific, that none of the material requested was relevant to his defense, and that the defendant had not shown that he had no alternate means of gathering the requested documents. The Commonwealth also argued that the summonses would be an invasion of the privacy of the complainant and others — an argument that was, as we will discuss below, untimely.

[6]In Federal practice, orders to appear in court or for production of documents from a third party generally are termed "subpoenas" or "subpoenas duces tecum." In Massachusetts, orders for the same purposes generally are termed "summonses." See Black's Law Dictionary 1440, 1450 (7th ed. 1999) (subpoena defined as a "writ commanding a person to appear before a court

tecum); *United States* v. *Hughes*, 895 F.2d 1135, 1145-1146 (6th Cir. 1990) (affirming District Court judge's allowance of government's motion to quash subpoena for records from third party). See also *United States* v. *Raineri*, 670 F.2d 702, 712 (7th Cir.), cert. denied, 459 U.S. 1035 (1982) (government's standing to move to quash defendant's subpoena for additional witness testimony rests on "its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness's] credibility").[7] We agree. The Commonwealth, charged with prosecuting the case, will often be able to assist a judge in determining whether a motion under rule 17 (a) (2) involves an improper "fishing expedition." See *Lampron, supra* at 269. The Commonwealth, of course, also has an interest in preventing unnecessary harassment of a complainant and other Commonwealth witnesses caused by burdensome, frivolous, or otherwise improper discovery requests. A complainant or witness should be forced neither to retain counsel nor to appear before a court in order to challenge, on the basis of a partial view of the case, potentially impermissible examination of her personal effects and the records of her personal interactions. See *State* v. *Decaro*, 252 Conn. 229, 253-254 (2000). Those dangers are particularly obvious where, as here, the summonses are directed at minors and their caretakers. The Commonwealth has standing to challenge a defendant's motion for summonses.[8]

b. *Merits.* A judge's task in reviewing a defendant's request for rule 17 (a) (2) summonses is to balance the defendant's right to mount a defense with the Commonwealth's right to

---

or other tribunal"; summons defined as a "notice requiring a person to appear in court as a juror or witness").

[7]The defendant cites two Federal cases that denied the government standing to move to quash subpoenas to third parties. See *United States* v. *Nachamie*, 91 F. Supp. 2d 552, 558-561 (S.D.N.Y. 2000); *United States* v. *Tomison*, 969 F. Supp. 587, 596 (E.D. Cal. 1997). We conclude, at least in the context of this case, that we must follow the clear majority rule allowing the government standing.

[8]While we conclude that the Commonwealth has *standing* to challenge a defendant's motion for the issuance of summonses, we do not suggest that the Commonwealth's participation is required in all rule 17 (a) (2) proceedings. The Commonwealth may choose not to appear. There may also be occasions in which a defendant seeks leave from the court to move ex parte for the issuance of a summons, an issue we need not and do not address in this case.

prevent unnecessary delay of the trial and unwarranted harassment of witnesses and third parties. The "procedure for issuance of a summons for the production of documentary evidence and objects under rule 17 (a) (2)," which we discussed in *Lampron, supra* at 270, is designed to effectuate such a balance. In *Lampron*, we adopted the standards articulated by the Federal courts regarding the issuance of a subpoena for production of documentary evidence "[b]ecause our rule was modeled after Fed. R. Crim. P. 17 (c) and is intended to address the same circumstances . . . ." *Id.* Accordingly, "the party moving to subpoena documents to be produced before trial must establish good cause, satisfied by showing '(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application [was] made in good faith and is not intended as a general "fishing expedition." ' " *Id.* at 269, quoting *United States* v. *Nixon*, 418 U.S. 683, 699-700 (1974). "[R]ule 17 is reserved for evidentiary materials that are likely to be admissible at hearing or at trial . . . and not invoked merely for the exploration of potential evidence." *Id.*, citing *Bowman Dairy Co.* v. *United States*, 341 U.S. 214 (1951). In determining under the first part of the four-part test whether the material sought is "evidentiary and relevant," "the evidentiary standard of relevance applies," and the defendant must show "that the documentary evidence has a 'rational tendency to prove [or disprove] an issue in the case.' " *Id.* at 269-270, quoting *Commonwealth* v. *Chretien*, 383 Mass. 123, 136 (1981). While a judge must be sensitive to the interaction between the Federal standard and the subtleties in the Commonwealth's evidentiary rules, *Lampron* puts to rest the defendant's assertion that the Commonwealth's standard under rule 17 (a) (2) differs from the Federal standard of Fed. R. Crim. P. 17 (c).[9]

In proceedings to issue summonses to third parties, the mov-

---

[9]*Commonwealth* v. *Lampron*, 441 Mass. 265 (2004) (*Lampron*), also puts to rest the misconception that the standard for issuance of a rule 17 (a) (2) sum-

ing party has the burden of demonstrating that the requirements of rule 17 (a) (2) have been met. See *United States* v. *Arditti,* 955 F.2d 331, 345-346 (5th Cir.), cert. denied, 506 U.S. 998 (1992), and cert. denied sub nom. *Avila* v. *United States,* 506 U.S. 1054 (1993). Even where the defendant's request is unopposed, the judge hearing the motion must ensure that the procedure we outlined in *Lampron* is not abused.

Here, both parties err in their proposed application of rule 17 (a) (2). The Commonwealth suggests an overly narrow reading of the defendant's rights, while the defendant interprets the rule too broadly. We are especially concerned that the prosecutor opposed every one of the defendant's requests, which effectively deprived the judge of the opportunity for a meaningful evaluation of defense counsel's request. The prosecutor's obligations demand a more reasoned and constructive approach.

A single example from the record illuminates the problem. The defendant requested access to all of the complainant's elementary and middle school attendance records. The defendant was charged with assaulting the complainant on days when he drove her to her elementary school, and specifically on September 8 or 10, 1999. The relevance and evidentiary value of the complainant's school attendance records for September 8 and 10, 1999, is unquestionable. On the other hand, the defendant's request for the complainant's attendance records at middle school three years later cannot be justified under *Lampron.*

Because we issued our decision in *Lampron* after the judge had ruled in this matter, we limit our interlocutory review of this case. See *Northeast Petroleum Corp.* v. *Commissioner of Revenue,* 395 Mass. 207, 212 (1985), *S.C.,* 401 Mass. 44 (1987). To expedite the resolution of this matter, we affirm those portions of the judge's order to which the Commonwealth should have offered no objection, for materials with direct relevance to this case and, apart from speculative objections, clear eviden-

mons is the same as the standard for discovery under Mass. R. Crim. P. 14. See Mass R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004) (effective Sept. 7, 2004). The policy goals of the two rules differ, as do the procedures they require. See *Lampron, supra* at 268 n.4. Consequently, the parties' citations to cases interpreting rule 14 are of limited utility in evaluating the defendant's rule 17 motion. See *Jansen, petitioner, ante* 112, 117 n.11 (2005).

tiary value.[10] Specifically, we affirm the judge's order insofar as it allowed summonses to issue to the complainant's middle school, for "all reports, memoranda, documents, notes or files relating to or concerning" sexual abuse allegations raised by the complainant. Because the complainant acknowledges that she recorded the dates of her abuse in her journals, we also affirm the summons to the complainant's father for copies of the complainant's journals from 1999 and 2000.[11] Furthermore, because the complainant first complained of her abuse in an electronic communication to another child, we affirm the summonses to the parents of that child and to the complainant's father for electronic communications by the complainant from 1999 through May, 2003 that pertain to the defendant. For the reasons stated above, we also affirm issuance of a summons to the complainant's elementary school for the complainant's attendance records for September, 1999.

We further affirm the order issuing the summons to the Department of Social Services (department). Those documents that meet the *Lampron* test may properly be the subject of a summons for production. The department may, of course, raise any applicable privilege in response to the summons. See *Commonwealth* v. *Fuller*, 423 Mass. 216 (1996); *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993). See also note 10, *supra*; *Commonwealth* v. *Jones*, 404 Mass. 339, 340-344 (1989) (appropriate for judge to examine confidential department records prior to disclosure to defense counsel). Cf. *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 59-61 (1987) (in camera review of State child protective agency records satisfies constitutional requirements).

The remainder of the order is vacated, with the provision that the defendant be allowed a new opportunity to request the issu-

---

[10]The issuance of a summons pursuant to rule 17 (a) (2) does not necessarily assure that the documents requested will be delivered to the defendant. As we discussed in *Lampron, supra* at 271-272, the issuance of a summons may, in some cases, trigger the examination of third-party privilege. See *Commonwealth* v. *Fuller*, 423 Mass. 216 (1996); *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993). But examination of privilege is premature in a motion for rule 17 (a) (2) summonses, and the parties' citations to our cases concerning privilege are inapposite. See note 9, *supra*.

[11]During discovery, the Commonwealth produced the complainant's journal for 2001.

ance of summonses in accordance with the rules announced in *Commonwealth* v. *Lampron*, 441 Mass. 265, 269-271 (2004).

3. *Conclusion.* We affirm in part, vacate in part, and remand the case for further proceedings consistent with this opinion.

*So ordered.*